# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OREGONIANS FOR FLOODPLAIN PROTECTION, | |
| Plaintiff, | Case No. 1:25-cv-39-JMC |
| v. | **[PROPOSED] DEFENDANT-INTERVENORS' REPLY IN SUPPORT OF MOTION TO INTERVENE** |
| THE U.S. DEPARTMENT OF COMMERCE, et al., | |
| Defendants, | |
| NORTHWEST ENVIRONMENTAL DEFENSE CENTER, et al., | |
| [Proposed] Defendant-Intervenors. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 1

    I.    Conservation Groups Have Article III Standing .................................................. 1

    II.   Conservation Groups Have a Significant Protectable Interest in the Litigation. ............... 8

        a.   Conservation Groups and Their Members Have a Legally Cognizable Interest at Stake .......................................................................................................... 8

        b.   Absent Intervention, Disposition of this Case Will Impair Conservation Groups' Ability to Protect Their Interests ................................................................. 11

    III.  Federal Defendants May Not Adequately Represent Conservation Groups' Interests ..... 12

    IV.  Alternatively, Conservation Groups Satisfy the Standard for Permissive Intervention. .. 16

    V.   Federal Defendants' Proposed Conditions on Intervention Requested Have No Legal or Practical Basis and Should be Denied. ........................................................... 17

CONCLUSION .......................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Am. Forest Res. Council v. Hall*,
No. 1:07-cv-00484 (D.D.C. 2008) ........................................................................ 10

*Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*,
317 F.3d 334 (D.C. Cir. 2003) .............................................................................. 4

*ASPCA v. Feld Entm't, Inc.*,
659 F.3d 13 (D.C. Cir. 2011) ................................................................................ 9

*Audubon Soc'y of Portland v. Fed. Emergency Mgmt. Agency*,
No. 3:09-cv-729-HA (D. Or. 2009) ................................................................... 2, 11

*Bennett v. Spear*,
520 U.S. 154 (1997) .............................................................................................. 4

*Coal. of Ariz./New Mexico Ctys. for Stable Econ. Growth v. Dep't of the Interior*,
100 F.3d 837 (10th Cir. 1996) .......................................................... 11, 14, 15, 18

*Crossroads Grassroots Policy Strategies v. FEC*,
788 F.3d 312 (D.C. Cir. 2015) ...................................................................... 6, 12, 14

*Cty. of Fresno v. Andrus*,
622 F.2d 436 (9th Cir. 1980) .............................................................................. 15

*Food & Water Watch, Inc. v. Vilsack*,
808 F.3d 905 (D.C. Cir. 2015) ............................................................................. 9

*Friends of Animals v. Kempthorne*,
452 F. Supp. 2d 64 (D.D.C. 2006) ....................................................................... 9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*,
528 U.S. 167, 183 (2000) ............................................................................... 4, 5, 8

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) (cleaned up) ...................................................... 8, 14

*Hazardous Waste Treatment Council v. South Carolina (In re Sierra Club)*,
945 F.2d 776 (4th Cir. 1991) .............................................................................. 10

*Hodgson v. United Mine Workers of Am.*,
473 F.2d 118 (D.C. Cir. 1972) .............................................................................. 8

*Home Builders Ass'n of N. Cal. v. U.S. Fish and Wildlife Serv.*,
No. 1:06-cv-00932 (D.D.C. 2006) ....................................................................... 10

*Idaho Farm Bureau Fed'n v. Babbitt*,
58 F.3d 1392 (9th Cir. 1995) .............................................................................. 15

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .............................................................................................. 3

*Makhteshim Agan of N. Am., Inc. v. Nat'l Marine Fisheries Serv.*,
No. 8:18-cv-00961-PWG, 2018 WL 5846816 (D. Md. Nov. 8, 2018) .................................... 16

*Me. Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*,
461 U.S. App. D.C. 223 (2023) ................................................................................................. 4

*Nat. Res. Def. Council v. Costle*,
561 F.2d 904 (D.C. Cir. 1977) .......................................................................................... 14, 17

*Nat. Res. Def. Council v. EPA*,
99 F.R.D. 607 (D.D.C. 1983) ................................................................................................... 8

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*,
519 F. Supp. 2d 89 (D.D.C. 2007) ...................................................................................... 5, 6

*Nat'l Wildlife Fed'n v. FEMA*,
345 F. Supp. 2d 1151 (W.D. Wash. 2004) .......................................................................... 4, 5

*Nw. Env't Def. Ctr. v. Fed. Emergency Mgmt. Agency*,
No. 3:23-cv-01335-SI (D. Or.) ..................................................................................... 2, 12, 16

*Red Lake Band of Chippewa Indians v. U.S. Army Corps of Eng'rs*,
338 F.R.D. 1 (D.D.C. 2021) ...................................................................................................... 6

*Safari Club Int'l v. Salazar*,
281 F.R.D. 32 (D.D.C. 2012) .................................................................................................. 13

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) ................................................................................................................ 12

*WildEarth Guardians v. Jewell*,
738 F.3d 298, 305 (2013) .......................................................................................................... 4

*WildEarth Guardians v. Salazar*,
272 F.R.D. 4, 15 (D.D.C. 2010) ....................................................................................... 14, 18

*Yocha Dehe Wintun Nation v. United States DOI*,
3 F.4th 427 (D.C. Cir. 2021) ................................................................................................. 6, 7

**Other Authorities**

Fed. R. Civ. P. 24(b)(3) ........................................................................................................... 16

**INTRODUCTION**

Both Plaintiff Oregonians for Floodplain Protection ("OFP") and Federal Defendants oppose Northwest Environmental Defense Center, Center for Biological Diversity, Willamette Riverkeeper, and The Conservation Angler's ("Conservation Groups") Motion to Intervene, ECF 9, both as to intervention as of right and permissive intervention.

Regarding Conservation Groups' motion to intervene as of right, OFP argues that Conservation Groups do not have Article III standing, do not have a significant protectable interest related to the claims at issue, that the resolution of OFP's claims will not impair Conservation Groups' interests, and that their interests are adequately represented by Federal Defendants. Pl.'s Opp. to Mot. to Int., ECF 16. For their part, Federal Defendants argue only that they adequately represent the Conservation Groups' interests. Federal Defs.' Opp. to Mot. to Int., ECF 15. Both OFP and Federal Defendants also oppose Conservation Groups' request for permissive intervention, arguing that Conservation Groups will allegedly increase costs and decrease efficiencies.

All of these arguments fail as Conservation Groups easily satisfy the requirements for intervention as of right and permissive intervention.

**ARGUMENT**

**I.      Conservation Groups Have Article III Standing.**

Since 2009, Conservation Groups have worked to protect their members' interests in Oregon's threatened and endangered native salmon, southern eulachon, and the Southern Resident killer whale from the adverse effects of FEMA's implementation of the National Flood Insurance Program ("NFIP") in Oregon. First, they filed litigation which resulted in a settlement which led to the production of the Biological Opinion at issue in this case. *See* Order Granting

Motion for Settlement, *Audubon Soc'y of Portland v. Fed. Emergency Mgmt. Agency,* No. 3:09-cv-729-HA (D. Or. 2009), ECF 23. Then, in September of 2023, they filed suit against FEMA for its alleged failure to implement the reasonable and prudent alternative ("RPA") in that Biological Opinion which was intended to avoid the jeopardization of the continued existence of these species and the destruction or adverse modification of their habitat. *See* Complaint, *Nw. Env't Def. Ctr. v. Fed. Emergency Mgmt. Agency*, No. 3:23-cv-01335-SI (D. Or.), ECF 1.

In both that suit, and in their Motion to Intervene in this case, Conservation Groups' members have attested to their longstanding aesthetic, recreational, professional, and economic interests in protecting the *specific species and habitats* at issue in the Biological Opinion, and how those species are impacted by the NFIP in Oregon and FEMA's failure to take sufficient action to avoid such impacts. *See Nw. Env't Def. Ctr.*, No. 3:23-cv-01335-SI, ECF 19 at 26–28, Mot. to Int. at 17–20. Their concerns are far more than speculative, as the National Marine Fisheries Service ("NMFS")—the expert agency concerning impacts to marine wildlife—has found that FEMA's failure to implement changes to the NFIP has resulted in the continuing loss of habitat for these species. *See* Mot. to Int., at 14–16. These harms would be redressed in part if this Court upholds the Biological Opinion and its RPA because they set FEMA on a path to avoiding unnecessary impacts to these species. Alternatively, these harms will be exacerbated if Plaintiff prevails in this litigation, causing FEMA to abandon their implementation of the RPA and go back to the drawing board on a new biological opinion nearly 16 years after the Conservation Groups began their efforts to protect threatened and endangered salmonids, southern eulachon, and Southern Resident killer whales in Oregon.

Despite this, Plaintiff argues that Conservation Groups lack Article III standing because Conservation Groups allegedly only have a "generalized interest in the protection of the

environment" and "general interests in salmonids." Pl.'s Opp. at 5. This cannot be squared with even a passing reference to the Conservation Groups' declarations and NMFS's status reviews that support Conservation Groups' members assertions that FEMA's delay in implementing the Biological Opinion and its RPA continues to harm these species in Oregon.

Far from generalized, Conservation Groups' members' declarations identify myriad interests in protecting *the specific species and habitats* that the Biological Opinion seeks to protect and that Plaintiff seeks to vacate. For instance, Mr. Buss detailed his recreational, aesthetic, and professional interests in the species impacted by the NFIP, including the Lower Columbia River Chinook, Upper Columbia River Chinook, Lower Columbia River steelhead, and Upper Willamette River steelhead, as well as his regular use and enjoyment of specific habitats, including the Molalla, McKenzie, Columbia, and Willamette Rivers. Declaration of Jesse Buss, ECF 9-4 at ¶¶ 5–8; *see also* Declaration of Michelle Emmons, ECF 9-5 at ¶¶ 4–9 (detailing her specific interests in the species and their habitats), Declaration of Noah Greenwald, ECF 9-6 at ¶¶ 1, 6–8, 10–11 (same). Mr. Buss also explained that he owns property that sits on the edge of the FEMA-delineated floodplain and is concerned that FEMA's long-outdated maps inaccurately depict his property's risk of flooding. Buss Decl. at ¶ 8. These members, and therefore Conservation Groups, have clearly demonstrated their specific—not general—interests in the species, their habitats, and in upholding the Biological Opinion and the interim measures that seek to preserve them. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562–63 (1992) ("Of course, the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing.").

Further, while Plaintiff attempts to cast NMFS's status reviews as having merely identified that "salmonid populations have declined due to a variety of factors," Pl.'s Opp. at 6,

those status reviews specifically called out FEMA's failure to take action to change its implementation of the NFIP in Oregon as a specific cause of decline. *See* Mot. to Int. at 14–16. Plaintiff also misunderstands Conservation Groups' burden to demonstrate standing. "[S]tanding does not follow the causation principles of tort law; an injury may be 'fairly traceable' to an agency action that is not 'the very last step in the chain of causation.' *Me. Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 461 U.S. App. D.C. 223, 234 (2023) (citing *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997). As such, the alleged source of injury need not be the *only* cause of harm to the members' interests. *See, e.g.*, *Nat'l Wildlife Fed'n v. FEMA*, 345 F. Supp. 2d 1151, 1162–63 (W.D. Wash. 2004). Rather, environmental parties "adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the agency's action or inaction. *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (2013) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 183 (2000)); *see also Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334, 337 (D.C. Cir. 2003) ("injury in fact can be found when a defendant adversely affects a plaintiff's enjoyment of flora or fauna").

In *Nat'l Wildlife Fed'n v. FEMA*, for example, a case involving a challenge by environmental groups to FEMA's failure to consult with NMFS over the implementation of the NFIP in Washington State, the court held that the organizations' "affidavits [were] sufficient to show injury in fact because [they] aver that they regularly live in and use the affected [] area, observing, photographing and fishing for chinook salmon on specific creeks and waterways" and because "they also aver that their concrete interests are injured by the increasingly limited opportunities for interacting with chinook salmon caused by development of the floodplains and

the attendant destruction of salmon habitat." *Nat'l Wildlife Fed'n*, 345 F. Supp. 2d at 1162;[1] *see also id*. at 1162–1165 (discussing specific actions FEMA takes through its implementation of the NFIP that cause damage to species and habitats). Conservation Groups here have likewise "show[n] injury to itself or its members, not merely injury to the environment." *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 519 F. Supp. 2d 89, 92 (D.D.C. 2007) (citing *Friends of the Earth*, 528 U.S. at 181). Tellingly, Plaintiff fails to cite any case that legitimately brings Conservation Groups' injury-in-fact allegations into doubt.

In addition to ignoring the content of the members' declarations, Plaintiff relies on a readily distinguishable case while ignoring decades-old legal principles. In stark contrast to this case, the party moving to intervene in the Clean Water Act dispute at issue in *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs* "did not squarely address" standing and alleged only its members' "interest in the protection of all waterbodies, including ditches," and that "its members can be injured by the ecological damage that results from destruction or contamination of unprotected waterways." 519 F. Supp. 2d at 92. The court held that the intervenor lacked standing because it "fail[ed] to allege more than a generalized interest in the protection of the environment." *Id*. Plaintiff asserts that Conservation Groups' standing allegations "suffer from the same defects," but offers no explanation as to why. *See* Pl.'s Opp. at 5. A far cry from alleging only "a generalized interest in the protection of the environment," *Nat'l Ass'n of Home*

---

[1] Further, the environmental groups in *Nat'l Wildlife Fed'n* satisfied the injury-in-fact requirement *even prior* to consultation and NMFS's subsequent determination that FEMA's implementation of the NFIP in Washington was jeopardizing the species at issue in the members' declarations. 345 F. Supp. 2d at 1153–54. Here, NMFS already determined that the NFIP contributes to harmful floodplain development that further imperils the ESA-listed species that Conservation Groups' members have a legally cognizable interest in protecting, further undermining Plaintiff's argument that the harm they suffer is "not sufficiently concrete". Pl.'s Opp. at 6; *see also* Mot. to Int. at 14–16 (detailing the species' 5-year status reviews, including NMFS's finding that the NFIP continues to degrade fish habitat).

*Builders*, 519 F. Supp. 2d at 92, Conservation Groups' members explain in detail how their way of life is intimately intertwined with the continued existence of the specific species and habitats at the center of this lawsuit. *See generally* Buss Decl., Emmons Decl., and Greenwald Decl.

Moreover, despite Plaintiff's claims to the contrary and as explained in detail in Conservation Groups' Motion to Intervene, Mot. to Int. at 19–20, the members' injuries would be redressed by a decision from this Court that upholds the Biological Opinion and allows FEMA to implement interim measures. Conservation Groups' members' declarations specifically allege how Plaintiff's success in this case will negatively impact their interests in these species because, "[i]f the biological opinion—which seeks to protect these species and their habitat— was invalidated, or if FEMA was not able to take action to implement it, [the Conservation Groups' members'] way of life, and [their] recreational and aesthetic interests will continue to be harmed." *See*, *e.g.*, Emmons Decl. at ¶ 9; Buss Decl. at ¶¶ 9–10; Greenwald Decl. ¶ 11 (noting that the harm to his interests in the "fish, their rivers, and floodplain habitats as a whole in Oregon … would be redressed if the reasonable measures called for in the biological opinion are put into effect," and would be further harmed if Plaintiff's requested relief is granted, enjoining FEMA's implementation of the RPA).

Further, this Court has "generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 317 (D.C. Cir. 2015); *see also Red Lake Band of Chippewa Indians v. U.S. Army Corps of Eng'rs*, 338 F.R.D. 1, 4 (D.D.C. 2021) (citations omitted). Plaintiff cites *Yocha Dehe Wintun Nation v. United States DOI*, 3 F.4th 427 (D.C. Cir. 2021) to distinguish *Crossroads* but, notably, makes

no attempt to apply this inapposite case to the facts at issue here.[2] Relevant to this case, however, the *Yocha Dehe* court emphasized that being a *direct* beneficiary of an agency action is "*not necessary*" to show that a party has standing to intervene in a suit challenging that action. *Id.* at 431 (emphasis added). Plaintiff conveniently ignores this aspect of *Yocha Dehe*'s holding, which supports, not refutes, Conservation Groups' standing.

Indeed, Conservation Groups' members clearly benefit from the issuance of the Biological Opinion and RPA because they require FEMA to take steps to improve conditions for the species and habitats in which the members hold a legally cognizable interest. *See, e.g.* Biological Opinion at AR 312–13 (Defs.' Exhibit 2). These members have, in turn, been harmed by FEMA's delay in implementing the RPA. *See, e.g.*, Greenwald Decl. at ¶ 11. Plaintiff here seeks to *further delay* any conservation measures that FEMA may enact by requesting this Court to vacate that very Biological Opinion and to enjoin FEMA's planned interim measures. Plaintiff cannot seriously contest that sending FEMA and NMFS back to the drawing board after 16 years would not harm Conservation Groups' members. Consequently, should this Court uphold the Biological Opinion and refuse to enjoin FEMA from taking action to implement interim protective measures pending full RPA implementation, the harm to Conservation Groups' measures would, in part, be redressed. In short, Plaintiff attempts to cast doubt where there is

---

[2] In *Yocha Dehe*, a tribe moved to intervene in a dispute regarding another tribe's ability to develop a parcel of land for a casino, alleging standing because a future casino could compete with the tribe's own facilities, and claiming an interest in protecting the sacred sites that could exist on the parcel. 3 F.4th at 429. The court denied the motion to intervene, citing the "indirect relationship between the [challenged action] and the as-yet- remote nature of any harm from [the other casino]" and the fact that none of the movant's own property was the subject of the litigation. *Id.* at 431. These facts are plainly inapplicable to this case.

Conservation Groups' Reply in Support of Motion to Intervene                                    7

none, for Conservation Groups have more than satisfied the requirements for Article III

standing.[3]

## II.    Conservation Groups Have a Significant Protectable Interest in the Litigation.

### a.    Conservation Groups and Their Members Have a Legally Cognizable Interest at Stake

Plaintiff's argument that Conservation Groups have not demonstrated a "significantly

protectable interest", Pl.'s Opp. at 7–8, similarly fails. First, Plaintiff's argument primarily rests

on Conservation Groups' alleged failure to demonstrate standing, but Conservation Groups have

undoubtedly met the requirements for Article III standing, and "standing is alone sufficient to

establish that [a movant] has an interest relating to the property or transaction which is the

subject of the action." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003)

(cleaned up).

Furthermore, Rule 24(a)(2)'s requirement that an intervenor have an interest in the

subject matter of the litigation "has been interpreted in broad terms." *Nat. Res. Def. Council v.*

*EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983). Indeed, this Circuit has observed that "[t]he right of

intervention conferred by Rule 24 implements the basic jurisprudential assumption that the

interest of justice is best served when all parties with a real stake in a controversy are afforded an

opportunity to be heard." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir.

1972).

Here, Conservation Groups clearly have a legally protectable interest in the Biological

Opinion as it was developed in response to previous litigation filed by Conservation Groups and

---

[3] Plaintiff does not contest that Conservation Groups have standing to sue on their members'
behalf because "the interests at stake are germane to the organization[s'] purpose[s], and neither
the claim asserted nor the relief requested requires the participation of individual members in the
lawsuit." *Friends of the Earth*, 528 U.S. at 181.

because the implementation of its RPA will address members' interests in the species impacted by unmitigated floodplain development in Oregon. *See supra* Section I. In response, Plaintiff again argues that Conservation Groups "merely assert a generalized 'conservation' interest in salmon recovery and fishing opportunities" rather than a legally protectible interest. Pl.'s Opp. at 8.[4] As demonstrated above, this is belied by Conservation Groups' declarations asserting their specific interest in species impacted by FEMA's failure to implement the Biological Opinion's RPA and explaining how Plaintiff's efforts to disrupt or end those efforts impact their interests. *See supra* Section I; *see also Friends of Animals v. Kempthorne*, 452 F. Supp. 2d 64, 69 (D.D.C. 2006) (finding that proposed intervenors had a legally protectible interest where their members had "the most direct contact with the three species which [were] the subject of the regulation at issue," "the greatest involvement with" the "ongoing conservation of the animals[,] and the most to lose if the[] conservation efforts [were] thwarted.") (cleaned up).

Finally, Plaintiff attempts to cast Conservation Groups' interest in maintaining the conservation measures that resulted from years of research, advocacy, and litigation as a "self-inflicted budgetary choice." Pl.'s Response at 8. But this argument is misguided as it is based not on cases addressing whether movants have a legally protectable interest, but instead on cases that did not address motions to intervene as of right at all—cases where plaintiffs sought to establish Article III standing based on the doctrine of "organizational standing," which is a separate doctrine from associational standing and not the basis of Conservation Groups' standing in this case. *See generally ASPCA v. Feld Entm't, Inc.*, 659 F.3d 13, 24–28 (D.C. Cir. 2011); *Food & Water Watch*, 808 F.3d at 919–21.

---

[4] To support its argument, Plaintiff cites to *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015), which contains no discussion of what constitutes a "legally protectible interest."

Conservation Groups' Reply in Support of Motion to Intervene                    9

Pertinent to this case, however, courts have long recognized that a public interest organization's longstanding advocacy for an agency's action underscores the organization's protectible interest in the disposition of litigation challenging that action. *See, e.g., Hazardous Waste Treatment Council v. South Carolina (In re Sierra Club)*, 945 F.2d 776, 779 (4th Cir. 1991) (holding that an environmental organization that was party to an administrative permitting proceeding was entitled to intervene as a matter of right in an action challenging the constitutionality of a governing state regulation). This Court has granted public interest organizations intervention as of right in myriad cases that are similar to this one. *See, e.g., Am. Forest Res. Council v. Hall*, No. 1:07-cv-00484 (D.D.C. 2008) (granting the Center for Biological Diversity intervention as of right to defend the U.S. Fish and Wildlife Service's protection of the marbled murrelet, which the organization had previously compelled (Dkt. 8)); *Home Builders Ass'n of N. Cal. v. U.S. Fish and Wildlife Serv*., No. 1:06-cv-00932 (D.D.C. 2006) (granting the Center for Biological Diversity intervention as of right to defend the U.S. Fish and Wildlife Service's listing of the Central California Salamander, which the organization had previously compelled (Dkt. 12)).

So too here Conservation Groups have a legally protectible interest in Plaintiff's suit because it seeks to overturn the Biological Opinion that was the result of their prior litigation, and to effectively invalidate Conservation Groups' related case in the District of Oregon where they are challenging FEMA's failure to implement the Biological Opinion's RPA. Should this Court strike down the Biological Opinion, those conservation efforts would be thwarted as further delay would exacerbate the harm to species listed as endangered or threatened under the Endangered Species Act ("ESA") which NMFS has found have already suffered from FEMA's

implementation of the NFIP in Oregon, and its delay in implementing the Biological Opinion's

RPA. *See* Mot. to Int. at 14–16; *see generally* Buss Decl., Emmons Decl., and Greenwald Decl.

Conservation Groups therefore have more than adequately alleged a legally cognizable interest at

stake.

> **b.     Absent Intervention, Disposition of this Case Will Impair Conservation Groups' Ability to Protect Their Interests**

Plaintiff next contends that the relief it seeks will not "affirmatively set Movants'

interests back." Pl.'s Opp. at 9, despite the fact that the requested relief—withdrawal of the

Biological Opinion—will wind back the clock and put Conservation Groups in the same position

as they were in 2011, waiting for FEMA and NMFS to develop a (new) biological opinion

addressing FEMA's implementation of the NFIP in Oregon. *See* Order Granting Mot. for

Settlement, *Audubon Soc'y of Portland*, No. 3:09-cv-729-HA, ECF 23. This alone is sufficient to

show that Conservation Groups' interests would be impaired.

But Conservation Groups' members have likewise demonstrated that their long-standing

interests in the conservation of the species at issue will be impaired if protections are further

delayed. *See*, *e.g.*, Emmons Decl. at ¶ 9; Buss Decl. at ¶¶ 9–10; Greenwald Decl. ¶ 11; *see also*

*Coal. of Ariz./New Mexico Ctys. for Stable Econ. Growth v. Dep't of the Interior*, 100 F.3d 837,

841–44 (10th Cir. 1996) (finding that a possible delay in protections following a potential

injunction harmed the movant's interests in preserving the protections he obtained through prior

litigation and his interests in the species' protection generally). The delay imposed if the

Biological Opinion is vacated would clearly harm Conservation Groups' members' interests in

the *immediate implementation* of interim conservation measures to mitigate the NFIP's ongoing

harm to the species and their floodplain habitats. The connection between a favorable ruling for

Plaintiff and delayed or denied protection to the species and their habitat is thus far from

"attenuated" as Plaintiff claims. Pl.'s Opp. at 9. Thus, disposition of this case will clearly impair Conservation Groups' ability to protect their interests.

### III.    Federal Defendants May Not Adequately Represent Conservation Groups' Interests.

Both Plaintiff and Federal Defendants argue that Federal Defendants "adequately represent" Conservation Groups' interests. However, this requirement for intervention is "not onerous," and "a movant ordinarily should be allowed to intervene unless *it is clear* that the party will provide adequate representation[.]" *Crossroads*, 788 F.3d at 321 (cleaned up). Conservation Groups easily meet the "minimal" showing that Federal Defendants' representation of Conservation Groups' interests "'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal.").

First, the relief sought by Plaintiff in this case, if issued, will undoubtably directly impair Conservation Groups' related litigation in the District of Oregon where Conservation Groups seek to hold FEMA accountable for its alleged failure to implement the RPA or otherwise take adequate steps to insure against jeopardy and adverse modification. *See* Compl., *Nw. Env't Def. Ctr.*, No. 3:23-cv-01335-SI. Federal Defendants have stated no interest in protecting Conservation Groups' ability to pursue that litigation, and the parallel disposition of these suits could lead to numerous points of divergence in this case. For instance, Conservation Groups intend to file a motion to transfer this litigation to the District of Oregon if their motion to intervene is granted in order to avoid conflicting rulings from two different judges in two different federal courts on the same Biological Opinion and in the interests of judicial efficiency. Conservation Groups' case is fully briefed in front of Judge Simon in the District Court of

Oregon with oral argument scheduled for March 18, 2025. Given the significant resources his chambers have likely already committed to that case, judicial efficiency counsels in favor of having this related litigation proceed in front of him as well. However, despite Federal Defendants' original statement that they intend to file a motion to transfer, ECF 10 at 2, the timely resolution of which is critical given Plaintiff's pending motion for a preliminary injunction, they have now stated that they will *not* move to transfer the case. *See* Fed. Defs.' Response to Minute Order, ECF 19.

Also, Federal Defendants have already failed to make arguments Conservation Groups would have raised, providing a "legitimate basis for concern over the adequacy of the representation of [Conservation Groups'] interests" here. *Safari Club Int'l v. Salazar*, 281 F.R.D. 32, 42 (D.D.C. 2012). Specifically, Federal Defendants failed to address the discrepancy between the relief requested in Plaintiff's Motion for Preliminary Injunction, ECF 4, against the relief requested in their Memorandum in Support, ECF 4-1. Plaintiff's Motion requests a broad preliminary injunction requiring FEMA to "halt its unlawful efforts to change the minimum floodplain development standards for participation in the [NFIP]." Pl.'s Mot. for Prelim. Inj. at 1. In contrast, Plaintiff's memorandum in support seeks the more appropriately limited relief asking the Court to "bar[] Defendants from implementing or enforcing the PICMs and De Facto Amendment pending resolution of this case." Pl.'s Memo in Support of Prelim. Inj. at 45. Federal Defendants' failure to address this discrepancy—between effectively halting FEMA's already overdue compliance with the Biological Opinion in its entirety with the more appropriate requested relief regarding FEMA's implementation of the PICMs during the pendency of Plaintiff's litigation—is a concrete example of how Federal Defendants not only "may" not fully represent the Conservation Groups' interests, but are *already* failing to do so.

It is true that, as of the filing of this reply, Federal Defendants have attested that they intend to defend the Biological Opinion, and thus share *a* goal with Conservation Groups. But this "overlap" in generic goals is not sufficient to deny applicant's motion for intervention, *Fund for Animals,* 322 F.3d at 736–37, and "general alignment" is not dispositive. *Crossroads*, 788 F.2d at 321. "[E]ven when the interest of a federal agency and potential intervenor can be expected to coincide, that does not necessarily mean adequacy of representation is ensured for purpose of Rule 24(a)(2)." *Id.* Neither Federal Defendants nor Plaintiff address the D.C. Circuit's concerns on this point.

And it is "well-established" that a government entity generally cannot adequately represent the interests of private parties. *WildEarth Guardians v. Salazar,* 272 F.R.D. 4, 15 (D.D.C. 2010); *see also Crossroads*, 788 F.2d at 321 (noting that "we look skeptically on government entities serving as adequate advocates for private parties"); *Fund for Animals*, 322 F.3d at 736 (the potential for diverging interests, despite some partial congruence, rendered the U.S. Fish and Wildlife Service unable to provide adequate representation of movant's interest); *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912–913 (D.C. Cir. 1977) (upon a "particularistic inquiry as to interest" the court determined that the proposed intervenors had met the "minimal burden" that the Environmental Protection Agency could not adequately represent their interest, despite a shared interest in the proper administration of a settlement agreement). This is because private parties' specific interests often conflict with the Federal Government's broader, and often competing, public interests. *See, e.g.*, *Coal. of Ariz./New Mexico Ctys.*, 100 F.3d at 845 (finding this requirement met where an individual's specific interest in protecting a species was not adequately represented by federal defendants even though those federal defendants were defending their regulation protecting the species). Here, Conservation Groups and their members

have specific interests in the conservation of floodplains and the restoration of floodplain-dependent species that does not align with the numerous interests of the Federal Government in complying with *both* the ESA and insuring the effective implementation of the NFIP. *See* Mot. to Intervene at 17–20.

The Conservation Groups' specific interests are illustrated by the nearly 16 years they have spent ensuring that Federal Defendants comply with their ESA obligations when implementing the NFIP in Oregon, including their prior suit which forced Federal Defendants to produce the Biological Opinion in the first place. The Tenth Circuit addressed a similar issue in *Coalition of Arizona/New Mexico Counties for Stable Econ. Growth*, where it found the Federal Government's adequate representation of an individual's interest in a species "all the more suspect" because they had only moved to protect the species after that individual had brought suit to enforce their compliance with the ESA. 100 F.3d at 845; *see also Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1398 (9th Cir. 1995) (holding that U.S. Fish and Wildlife would not adequately represent the interests of environmental groups in an action challenging a species' protection because U.S. Fish and Wildlife had listed the species only after being sued by the environmental groups, who had originally petitioned for the protection of the species under the Act); *Cty. of Fresno v. Andrus*, 622 F.2d 436, 438–39 (9th Cir. 1980) ("There is further reason to doubt that the Department will fully protect [the movant's] interest . . . in light of the fact that it began its rulemaking only reluctantly after [the movant] brought a law suit against it."). So too here, FEMA only began its process of complying with the ESA *after* Conservation Groups brought suit forcing them to do so.

And Conservation Groups' efforts to ensure that FEMA complies with the ESA are ongoing, as they are currently seeking to prevent further delay from FEMA on the already long

overdue implementation of the Biological Opinion. *See* Complaint, *Nw. Env't Def. Ctr.*, No. 3:23-cv-01335-SI, ECF 1. Plaintiff itself acknowledges that FEMA's about-face regarding the necessity of interim measures, and their current effort to enforce the PICMs, are a result of Conservation Groups' suit in the District of Oregon. Pl.'s Opp. at 3. And, as Plaintiff further points out, FEMA has changed course on its implementation of PICMs as recently as November 2024. Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. at 32. Given FEMA's inconsistent track record regarding compliance with the ESA, there is reason to suspect that Federal Defendants *may not* adequately represent Conservation Groups' interests in defending FEMA's compliance with the ESA.[5] And that is all that is required for Conservation Groups to meet the "minimal" requirement for intervention as of right.

## IV.    Alternatively, Conservation Groups Satisfy the Standard for Permissive Intervention.

Alternatively, Conservation Groups meet the standard for permissive intervention because their participation in this case will not cause undue delay or prejudice, Fed. R. Civ. P. 24(b)(3), and Federal Defendants' and Plaintiff's claims to the contrary are unsubstantiated.

As an initial matter, the question is not whether Conservation Groups participation will result in *any* delay, but rather whether it will result in "*undue*" delay. *See id.*; *see also Makhteshim Agan of N. Am., Inc. v. Nat'l Marine Fisheries Serv.*, No. 8:18-cv-00961-PWG, 2018 WL 5846816, at *6 (D. Md. Nov. 8, 2018) ("Adding parties to a case cannot help but complicate the proceedings. It is all but certain, too, to result in some delay. This alone, though, does not mean that intervention should be denied.") (cleaned up). As an initial matter,

---

[5] Also, there is reason to believe that the recent change in administration may affect FEMA's course in this litigation as President Trump has suggested disbanding FEMA entirely. *See* https://www.nytimes.com/live/2025/01/24/us/los-angeles-wildfires-california?searchResultPosition=2#trump-fema-states-disasters. Accessed Jan. 31, 2025.

Conservation Groups have already demonstrated that they will act with timeliness in this case, having moved to intervene just days after it was filed. *Compare* Comp., ECF 1 *with* Mot. to Int., ECF 9. Further, Federal Defendants' assertion that intervention will "increase the volume of pleadings and could cause extra motions practice[,]" Defs.' Opp. to Mot. to Int., ECF 15 at 6, is insufficient to show undue delay. As Conservation Groups have already noted, a staggered briefing schedule can address this issue by allowing Conservation Groups to review Federal Defendants' briefing and attempt to avoid any undue repetitiveness.

Federal Defendants and Plaintiff also argue that Conservation Groups will not contribute to this Court's resolution of the case. But Conservation Groups have been litigating over FEMA's compliance with the NFIP since 2009 and are intimately familiar with the Biological Opinion and its supporting documents given their ongoing litigation in the District of Oregon. Combined with their specific interest in upholding the Biological Opinion and ensuring the protection of the species impacted by the NFIP in Oregon, they present a perspective not otherwise represented in this case and will contribute to this Court's understanding of the issues at play and the potential ramifications of any decision. Thus, permissive intervention should be granted. *See Nat. Res. Def. Council v. Costle*, 561 F.2d at 912–13 (noting that intervention a movant's "participation in defense of [government] decisions may also be likely to serve as a vigorous and helpful supplement to [the government]'s defense").

## V.    Federal Defendants' Proposed Conditions on Intervention Requested Have No Legal or Practical Basis and Should be Denied.

Lastly, Federal Defendants request that if Conservation Groups Motion to Intervene is granted, that that they be "restricted from filing any independent claims in this action against other parties, seeking discovery or moving to supplement the administrative record, or independently appealing any decision in this matter unless Federal Defendants elect to appeal."

Conservation Groups' Reply in Support of Motion to Intervene                                    17

Fed. Defs.' Opp. at 7. As Defendant-Intervenors, Conservation Groups have no intention of filing independent claims in this case and cannot seek to recovery attorneys' fees and costs except in very limited circumstances. But if Conservation Groups' motion to intervene is granted "the intervenor becomes no less a party than others and has the right to file legitimate motions." *Coal. of Ariz./New Mexico Ctys.*, 100 F.3d at 844. They therefore cannot consent to Federal Defendants' proposed conditions pertaining to the administrative record, as Conservation Groups have yet to see the record. Moreover, there is no legal basis to restrict an intervenor's right to appeal and Federal Defendants provide none for curtailing this fundamental legal right. Federal Defendants' failure to offer "context-specific" conditions, or any analysis of how these conditions are "tailored to fit the needs of the particular litigation," undermine the purported need. *WildEarth Guardians v. Salazar,* 272 F.R.D. at 20. Federal Defendants' proposed conditions should therefore be denied.

## CONCLUSION

For the foregoing reasons, Conservation Groups request that this Court grant Conservation Groups' Motion to Intervene.

Dated: January 31, 2025               Respectfully submitted,


                                      */s/ Chelsea Stewart-Fusek*
                                      CHELSEA STEWART-FUSEK
                                      (D.C. Bar No. OR0029)
                                      Center for Biological Diversity
                                      P.O. Box 11374
                                      Portland, OR 97211
                                      Phone: (971) 717-6425
                                      Email: cstewartfusek@biologicaldiversity.org

                                      */s/ Ryan Adair Shannon*
                                      Ryan Adair Shannon (D.C. Bar No. OR 0007)

Conservation Groups' Reply in Support of Motion to Intervene                    18

CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 11374
Portland, OR 97211
T: 503.283.5475 ext. 407
F: 503.283.5528
E: rshannon@biologicaldiversity.org