IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

OREGONIANS FOR FLOODPLAIN
PROTECTION, et al.,

    Plaintiffs,

          v.                    Civil Case No. 1:25-cv-00039

U.S. DEPARTMENT OF COMMERCE,
et al.,

    Defendants.

**FEDERAL DEFENDANTS' MEMORANDUM IN OPPOSITION TO
DEFENDANT-INERVENORS' MOTION TO TRANSFER VENUE**

**INTRODUCTION**

Plaintiffs in this case challenge two related federal agency actions. Plaintiffs challenge the merits of the 2016 biological opinion ("BiOp") issued by Defendant National Marine Fisheries Service ("NMFS") to the Federal Emergency Management Agency ("FEMA") pursuant to the Endangered Species Act ("ESA"). The NMFS' BiOp recommended that FEMA implement a six-element "reasonable and prudent alternative" ("RPA") to avoid jeopardy to sixteen ESA-listed anadromous fish species and Southern Resident killer whales, and destruction or adverse modification of designated critical habitat. Plaintiffs also challenge FEMA's decision, on statutory and constitutional grounds, to implement pre-implementation compliance measures ("PICM") based on RPA Element 2 of the BiOp, to ensure that continued implementation of the National Flood Insurance Program ("NFIP") in Oregon does not jeopardize any ESA-listed species pending FEMA's implementation of the other NMFS-recommended RPA elements.

Defendant-Intervenors have moved to transfer this suit to the United States District Court for the District of Oregon, where a related case challenging only FEMA's actions in response to

the NMFS' BiOp is pending and has been fully briefed on cross-motions for summary judgment. *See Nw. Env't Def. Ctr. v. FEMA,* Case No. 3:23-cv-01335-SI (D. Or. case filed Sept. 14, 2023) (docket sheet, ECF No. 12-1). Considering the constitutional claims presented by Plaintiffs here, which are not at issue in the Oregon case, and the potential nationwide implications of a ruling on those claims, public interest considerations disfavor transfer. As set forth below, the Court should deny the Defendant-Intervenors' motion to transfer, because the interests of justice will best be served by hearing this action in the District of Columbia.

## BACKGROUND

### I. Factual Background

On April 14, 2016, in response to ESA consultation initiated by FEMA pursuant to the settlement in *Audubon Society of Portland v. FEMA*, Case No. 3:09-cv-729-HA (D. Or. June 25, 2009), NMFS issued a BiOp (ECF No. 12-2) concerning the effects of FEMA's administration of the NFIP in Oregon. *See also* ECF No. 12-7 (errata dated January 24, 2017). The BiOp concluded that FEMA's administration of the NFIP in Oregon is likely to jeopardize the continued existence of sixteen ESA-listed anadromous fish species and Southern Resident killer whales. The BiOp included an RPA with six elements that NMFS recommended FEMA undertake to avoid jeopardizing the seventeen species. RPA Element 2 calls for FEMA to implement interim measures to reduce the loss of floodplain habitat features and functions as the long-term measures laid out by other RPA Elements are phased in.

On July 15, 2024, in efforts to implement RPA Element 2, FEMA publicly announced the PICM that include outreach, education, and direct technical assistance to NFIP-participating communities in Oregon. *See* AR 0018760 (letter to communities, ECF No. 12-6). To meet RPA Element 2's goal of using mitigation to maintain existing natural floodplain functions pending

full RPA implementation, *see* AR 0000289 (ECF No. 12-2), FEMA is requiring that NFIP communities demonstrate actions have been taken that result in no net loss of species and habitat as measured by effects of development on flood storage, water quality, and riparian vegetation. AR 0018611 (fact sheet, ECF No. 12-19). Specifically, NFIP-participating communities in Oregon must select one of the following pathways: (1) adopting a model ordinance that considers impacts to species and their habitat and requires mitigation to a no net loss standard; (2) choosing to require a habitat assessment and mitigation plan for development on a permit-by-permit basis; or (3) putting in place a prohibition on floodplain development in the special flood hazard area. Complaint Exhibit C, ECF No. 1-3. Communities were required to elect a PICM pathway by December 1, 2024. *Id.* If a community failed to inform FEMA of its selection, the permit-by-permit PICM pathway was assigned as a default. *Id.* Communities are required to report their floodplain-development activities to FEMA beginning January of 2025. *Id.*

Plaintiff *Oregonians for Floodplain Protection* ("*OFP*") previously filed suit in this Court in 2017. Judge Leon dismissed that prior suit as unripe. *Oregonians for Floodplain Prot. v. U.S. Dep't of Com.*, 334 F. Supp. 3d 66, 74 (D.D.C. 2018). The Court reasoned that "[P]laintiffs have not alleged to date any ongoing, concrete injury arising from FEMA's implementation of the RPA." *Id.*

More recently, on September 14, 2023, the Northwest Environmental Defense Center, Center for Biological Diversity, Conservation Angler, and Willamette Riverkeeper filed a complaint against FEMA in the U.S. District Court for the District of Oregon. Those plaintiffs in the pending Oregon suit allege that FEMA failed to timely implement the RPAs recommended in the NMFS' BiOp. The parties recently completed summary judgment briefing in the Oregon

case, and *OFP* filed an amicus brief. Oral argument in the Oregon case is scheduled for March 18, 2025.

## II.     Standard for Granting Motions to Transfer

The factors for which courts transfer cases to other districts are set forth in 28 U.S.C. § 1404(a):

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . .

*Id.* The statute facilitates the transfer of actions to a more appropriate federal forum, *see Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964), affording district courts wide discretion to transfer venue "according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Hawksbill Sea Turtle v. FEMA*, 939 F. Supp. 1, 3 (D.D.C. 1996) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

District courts use a two-step analysis to determine whether a case should be transferred. A court must first determine whether the action could have been brought in the transferee district. *See S. Utah Wilderness All. v. Lewis*, 845 F. Supp. 2d 231, 235 (D.D.C. 2012). If this threshold issue is answered in the affirmative, courts then consider the other principal factors through a balancing of private and public interests. *See Valley Cmty. Pres. Comm'n v. Mineta*, 231 F. Supp. 2d 23, 44–45 (D.D.C. 2002).

## ARGUMENT

The Court should deny Defendant-Intervenors' motion to transfer this case to the District of Oregon based on private and public-interest considerations. Although the PICM involve FEMA's administration of the NFIP in Oregon, Plaintiffs' claims involve a FEMA headquarters-level decision and have national significance. Among relevant private interest considerations, the

District of Columbia is FEMA's choice of forum because the subject matter of this suit has a substantial connection with this forum. Public interest considerations also disfavor transfer.

I.   **Venue is more appropriate in the District of Columbia, because the subject matter of the suit has a substantial connection with the District of Columbia.**

Defendants do not dispute that Plaintiffs could have brought this action in the District of Oregon, the transferee court proposed by Defendant-Intervenors. Furthermore, venue would be proper in Oregon to the extent that a substantial part of the events or omissions currently giving rise to Plaintiffs' claims occurred in that District. *See* 28 U.S.C. § 1404(a); *id.* § 1391(e); Complaint, ECF No. 1 at ¶ 13 (describing NFIP-participating communities in Oregon). Thus, the relevant question is whether venue is more appropriate in the District of Columbia or in the transferee district.

As a plaintiff's choice of forum is normally entitled to deference, the party seeking to transfer venue bears the burden of showing that the transfer is proper. *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). Federal Defendants defer to Plaintiffs to address the private interest factors relevant to the District of Columbia as their choice of forum.[1] However, in addition to being Plaintiffs' chosen forum, the District of Columbia is also the Federal Defendants' preferred forum and the forum where a substantial part of the events or omissions giving rise to Plaintiffs' claims against FEMA occurred. FEMA's Decision Memorandum to implement the PICM was signed at FEMA Headquarters in Washington, D.C., by David Maurstad, Deputy Associate Administrator of FEMA. *See* AR 0017875 (Exhibit 1). Although the "mere involvement on the part of federal agencies, or some federal officials who

---

[1] The private considerations include: 1) the plaintiffs' choice of forum; 2) the defendants' choice of forum; 3) where the claims arose; 4) convenience of the parties; 5) convenience of the witnesses; and 6) ease of access to sources of proof. *Trout Unlimited,* 944 F. Supp. at 16. *Id.*

5

are located in Washington, D.C., is not determinative," *see Shawnee Tribe v. United States*, 298 F. Supp. 2d. 21, 25-26 (D.D.C. 2002), the record here demonstrates "substantial personalized involvement by a member of the Washington, D.C." agency (FEMA) and indicates that there are meaningful ties to the District of Columbia. *Niagara Pres., Coal. v. Fed. Energy Regul. Comm'n*, 956 F. Supp. 2d. 99, 105 (quoting *S. Utah Wilderness All. v. Norton*, A. 01-2518(CKK), 2002 WL 32617198, at *3 (D.D.C. June 28, 2002)). Moreover, to the extent that Plaintiffs assert constitutional claims regarding FEMA's actions, this case "'stems from the formulation of national policy on an issue of national significance.'" *Oceana, Inc. v. Pritzker*, 58 F. Supp. 3d 2, 6 (D.D.C. 2013) (quoting *Greater Yellowstone Coal. v. Kempthorne*, Nos. 07–2111, 07–2112, 2008 WL 1862298, at *5 (D.D.C. Apr. 24, 2008)). Under the circumstances, given the national significance of this case, FEMA would prefer to have this case adjudicated in the District of Columbia. Transfer of this case away from the District of Columbia is disfavored because the claims against FEMA are connected to this forum.

In sum, among other private interest considerations including Plaintiffs' choice of forum, FEMA prefers to have this case adjudicated in Washington, D.C., where a substantial part of the events or omissions giving rise to Plaintiffs' claims against FEMA occurred.

## II.     The public interest factors do not favor transfer to the District of Oregon.

The public interest factors, to the extent that they weigh in favor of either forum, do not support transfer to the District of Oregon. The public considerations include: 1) "the local interest in deciding local controversies at home;" 2) the transferee district's familiarity with the governing law; and 3) congestion of the transferor and transferee districts. *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).

The first factor, the degree to which the courts in both venues are familiar with the governing laws, does not weigh in favor of transfer. Federal judges in the District of Oregon and the District of Columbia are equally capable to determine issues of compliance with NEPA, the ESA, and the Administrative Procedure Act ("APA"). *See Pres. Soc'y of Charleston v. U.S. Army Corps. of Eng'rs,* 893 F. Supp. 2d 49, 55 (citing cases, noting "[c]onsistently, district courts in this circuit have held that the mere fact that a case concerns the application of a federal statute by a federal agency does not provide a sufficient nexus to the District of Columbia to weigh against transfer.").[2] "If anything, this Court has more experience with APA cases, which would weigh against transfer." *Stewart v. Azar,* 308 F. Supp. 3d 239, 248 (D.D.C. 2018) (citing *Tuttle v. Jewell*, 952 F. Supp. 2d 203, 208 (D.D.C. 2013) (finding relevant that D.C. "receives more APA claims than its western colleagues")). Thus, the first public interest factor weighs somewhat against transfer.

The second factor, the relative congestion of the potential transferee and transferor courts also weighs somewhat against transfer, because transferring this action to the District of Oregon will increase the time necessary to adjudicate the case. Statistics on federal caseloads show that the time necessary to resolve a civil case in shorter in the District of Columbia than in Oregon.[3]

The third public interest factor—the interest in deciding local controversies at home—does not favor transfer to Oregon, either. Although the FEMA PICM will be implemented

---

[2] *See also S. Utah Wilderness All.)*, 2002 WL 32617198, at *4 -*5 (district courts in Utah and District of Columbia courts were equally capable of determining NEPA claims); *see also Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 49 (D.D.C. 2006) (finding no reason to break from "the principle that the transferee federal court is competent to decide federal issues correctly" (citation omitted)).

[3] *See* Table C-5—U.S. District Courts–Civil Federal Judicial Caseload Statistics (March 31, 2024) *available at* https://www.uscourts.gov/data-news/data-tables/2024/03/31/federal-judicial-caseload-statistics/c-5 (last visited Mar. 3, 2025).

entirely within Oregon, Plaintiffs' claims implicate statutory and constitutional questions of FEMA's authority that FEMA believes will have national significance as FEMA pursues ESA compliance in other jurisdictions. The claims presented in this case are not "localized controversies" that should be decided in another forum. *See, e.g., Citizen Advocs. for Responsible Expansion, Inc. v. Dole*, 561 F. Supp. 1238, 1240 (D.D.C. 1983) ("[I]t appears to the Court that justice requires that such localized controversies should be decided at home.").

In addition to these public interest factors described in *Trout Unlimited*, *supra*, another "paramount consideration" is the public interest in avoiding duplicative proceedings and potentially inconsistent judgments. *Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n*, 856 F. Supp. 2d 186, 193 (D.D.C. 2012). The underlying facts in the instant case admittedly overlap with the facts in *Northwest Environmental Defense Center* to the extent that both cases involve the PICM. However, the instant case presents claims against the NMFS' BiOp not found in the Oregon case. Furthermore, this case presents NEPA claims as well as statutory and constitutional claims against FEMA concerning its exercise of authority to establish minimum criteria for the eligibility of flood insurance pursuant to the National Flood Insurance Act. These claims are also unique to the instant case. The *Northwest Environmental Defense Center* case asserts only ESA citizen suit claims not presented here. Specifically, the *Northwest Environmental Defense Center* case concerns only whether FEMA's implementation of the NFIP in Oregon presently continues to jeopardize ESA-listed species and adversely modify their designated critical habitat in violation of the ESA a claim not presented in this case.[4] The potential for duplicative proceedings

---

[4] The Defendant-Intervenors abandoned their APA-based Second Claim for Relief against FEMA in *Northwest Environmental Defense Center* (concerning FEMA's allegedly unlawful delay in implementing the RPA) when Federal Defendants moved for summary judgment on that claim and Defendant-Intervenors conceded that they "seek summary judgment only on their First Claim for Relief." Case No. 3:23-cv-01335-SI, ECF No. 29 at 6 n.1.

and conflicting rulings in the *Northwest Environmental Defense Center* case is diminished to the extent that the claims asserted in that case are fundamentally different than the claims asserted here.

In sum, none of the public interest factors favors transfer of this case to the District of Oregon.

## CONCLUSION

Private and public interest factors do not favor transfer of this case to the District of Oregon. To the contrary, this case presents issues of national significance that should be heard in the District of Columbia, where FEMA made its decision (at its headquarters) to implement the PICM. The Court should deny Defendant-Intervenors' motion to transfer.

Dated: March 7, 2025

Respectfully submitted,

        ADAM R.F. GUSTAFSON
        Acting Assistant Attorney General
        Environment and Natural Resources Division
        United States Department of Justice

        */s/ Mark Arthur Brown*
        MARK ARTHUR BROWN, Senior Trial Attorney
        D.C. Bar No. 470050
        Wildlife and Marine Resources Section
        4 Constitution Square
        150 M Street, N.E.
        Washington, D.C. 20002
        Phone: (202) 305-0204
        mark.brown@usdoj.gov

        */s/ Krystal-Rose Perez*
        KRYSTAL-ROSE PEREZ, Trial Attorney
        TX Bar No. 24105931
        Natural Resources Section
        150 M Street NE
        Washington, D.C. 20002
        Phone: (202) 305-0486

krystal-rose.perez@usdoj.gov

*/s/ Lawrence K. Pittman*
LAWRENCE K. PITTMAN, Trial Attorney
GA Bar. No. 568134
Natural Resources Section
150 M Street NE
Washington, D.C. 20002
Phone: (202)-305-0420
Fax: (202) 305-0275
Lawrence.pittman@usdoj.gov

Counsel for Federal Defendants