**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| OREGONIANS FOR FLOODPLAIN PROTECTION et al., | |
| Plaintiffs, | |
| v. | Case No. 1:25-cv-39-JMC |
| U.S. DEPARTMENT OF COMMERCE et al., | **PLAINTIFFS' OPPOSITION TO DEFENDANT-INTERVENORS' MOTION TO TRANSFER** |
| Defendants, | |
| v. | |
| NORTHWEST ENVIRONMENTAL DEFENSE CENTER et al., | |
| Defendant-Intervenors. | |

## I.      INTRODUCTION

Two plaintiff organizations, Oregonians for Floodplain Protection and National Association of Homebuilders of the United States (collectively, "OFP"), both of which are headquartered in the District of Columbia, have challenged the failure of federal agencies and their officials headquartered in and around the District of Columbia to comply with the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544, Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, the National Environmental Policy Act ("NEPA"), and the United States Constitution in issuing and implementing a Biological Opinion concluding that implementation of the National Flood Insurance Program ("NFIP") in Oregon harmed ESA-listed species and their critical habitat. Although OFP chose this forum, and Federal Defendants also oppose transfer, ECF 29, Intervenors, some of whom are also headquartered in this District, now argue that this Court should disregard OFP's choice of forum and mandate transfer to the U.S. District Court for the District of Oregon. Intervenors have failed to carry their heavy burden that transfer is warranted.

Pls.' Opp'n to Def.-Intervenors' Mot. to Transfer – 1
*Oregonians for Floodplain Protection et al. v. Dep't of Commerce et al.*, No. 1:25-cv-39-JMC

A plaintiff's choice of forum is entitled to substantial deference and even more so when a plaintiff files in its home forum. Largely ignoring this standard, Intervenors devote most of their brief to discussing a separate case that they filed against the Federal Emergency Management Agency ("FEMA") in Oregon and spend considerable time misrepresenting the present case as a "local controversy." This case concerns FEMA's approach to the NFIP nationwide and its authority to impose FEMA's ESA obligations on municipalities and individuals around the nation. While this case will affect Oregonians, it more importantly has national implications. Moreover, no court is more capable than the District of Columbia to resolve these largely administrative record-based claims.

Intervenors have failed to overcome the significant hurdles of OFP's choice of home forum and the national implications of this case. The Court should deny Intervenors' Motion to Transfer ("Motion").

## II.      BACKGROUND

On April 14, 2016, the National Marine Fisheries Service ("NMFS") issued a Biological Opinion to FEMA on the impacts of the NFIP in Oregon, asserting that FEMA's implementation of the NFIP was causing jeopardy to 17 ESA-listed anadromous fish species and Southern Resident killer whales, and adversely modifying their critical habitat. NMFS, *Endangered Species Act (ESA) Section 7(a)(2) Jeopardy and Destruction or Adverse Modification of Critical Habitat Biological Opinion and Section 7(a)(2) "Not Likely to Adversely Affect" Determination for the Implementation of the National Flood Insurance Program in the State of Oregon* at 273-74 (2016), *available at* https://media.fisheries.noaa.gov/2022-01/2016-04-14-fema-nfip-nwr-2011-3197.pdf ("Biological Opinion"). During the consultation, FEMA Headquarters ("FEMA HQ") spent

considerable time and effort engaging with NMFS regarding the Biological Opinion and its Reasonable and Prudent Alternative ("RPA"). *See infra* Section IV.A.1.

The final Biological Opinion includes a six element RPA. *Id*. at 274-75. Relevant here, RPA Elements 3 and 4 directed FEMA to modify the NFIP by changing FEMA's federal regulations. For example, RPA Element 3 directs FEMA to revise its mapping protocols nationwide and to map erosion prone areas under the NFIP. *Id.* at 282-83. RPA Element 4 directs FEMA to modify the NFIP floodplain management criteria by adopting an "ESA performance standard." *Id.* at 288. RPA Elements 3 and 4 both require rulemaking that would affect the regulatory regime that FEMA implements nationwide. *Id.* at 282-83, 288.

In 2017, Oregonians for Floodplain Protection, National Association of Home Builders of the United States, and others challenged the Biological Opinion and FEMA's implementation of the Biological Opinion's RPA. This Court dismissed that suit finding that FEMA had not yet taken action injuring the plaintiffs. *Oregonians for Floodplain Prot. v. U.S. Dep't of Com.*, 334 F. Supp. 3d 66, 74 (D.D.C. 2018) ("*Oregonians I*") (citation omitted). Since then, OFP has waited for FEMA to take a final action related to the Biological Opinion so that it could re-assert its claims.

On September 14, 2023, Intervenors filed a complaint in the U.S. District Court for the District of Oregon seeking to compel FEMA to immediately implement RPA Elements 2 through 6. Compl., *Nw. Env't Def. Ctr. v. FEMA*, No. 3:23-cv-01335-SI (D. Or. Sept. 14, 2023), ECF 1. In that suit, Intervenors alleged injuries to their members "caused by FEMA's failure to implement the RPA" and that these injuries "would be redressed by a favorable decision ordering FEMA to implement that RPA elements by a date certain." Pls.' Mem. in Supp. of Summ. J. at 28, *Nw. Env't Def. Ctr. v. FEMA*, No. 3:23-cv-01335-SI (D. Or. July 29, 2024), ECF 19.

In response to Intervenor's suit, FEMA developed several pre-implementation compliance measures ("PICMs") and, on July 15, 2024, first announced to Oregon NFIP communities that they would be required to begin implementing the PICMs by December 1, 2024. These PICMs, which are the subject of the OFP's Motion for Preliminary Injunction, were developed in conjunction with FEMA HQ. *See* Third Lawrence Decl. Ex. P (Documentation of Decision-Making Rationale for the Implementation of interim Endangered Species Act compliance requirements for NFIP participating communities in Oregon). Further, FEMA responded to Intervenors' suit that their claims were unripe because FEMA has until September 1, 2027, to achieve "full implementation" of the RPA. Defs.' Combined Mem. in Opp'n to Pls.' Mot. for Summ. J. (ECF No. 19) & in Supp. of Defs.' Cross-Mot. for Summ. J. at 24, *Nw. Env't Def. Ctr. v. FEMA*, No. 3:23-cv-01335-SI (D. Or. Sept. 19, 2024), ECF 20.  Oral argument in the merits phase of that case is scheduled for March 18, 2025, with briefing on remedies deferred until after the court's decision on the merits, if necessary. *See, e.g.*, *id*. at 43; Pls.' Reply Br. in Supp. of Pls.' Mot. For Summ. J. & Resp. in Opp'n to Defs.' Cross Mot. at 25 n.15; *Nw. Env't Def. Ctr. v. FEMA*, No. 3:23-cv-01335-SI (D. Or. Oct. 21, 2024), ECF 29.

Following FEMA's issuance of the PICMs and acknowledgment that the PICMs constituted final agency action, OPF reasserted, in the present case, their challenges to the validity of the Biological Opinion and to FEMA's attempts to implement the RPA and moved to preliminarily enjoin the PICMs. *See* ECF 6-1 (Pl.'s Mem. in Supp. of Prelim. Inj.); ECF 13 (Defs.' Mem. in Opp'n to Pl.'s Mot. for Prelim. Inj.).

While OFP's suit in this Court and the Intervenor's suit filed in the Oregon District Court both concern the Biological Opinion and FEMA's actions in response thereto, each suit raises distinct issues that do not overlap. OFP here anticipates that the merits of this suit will be resolved

prior to the Oregon District Court's consideration of any briefing on the question of remedy, and long before FEMA's deadline of September 1, 2027, for full implementation of the RPA.

## III.    LEGAL STANDARD

A civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . . ."  28 U.S.C. § 1391(b)(2). A plaintiff's choice of forum is ordinarily entitled to deference. *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 17 (D.D.C. 1996); *NAACP v. Levi*, 418 F. Supp. 1109, 1113-14 (D.D.C. 1976). "[T]he question is not which district is the 'best' venue, or which venue has the most significant connection to the claim. The question is 'whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts.'"  *Johns v. Newsmax Media, Inc.*, 887 F. Supp. 2d 90, 96 (D.D.C. 2012) (citations omitted); *see also City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 543 (S.D.N.Y. 2005) (finding that venue can be proper even if a greater proportion of events took place elsewhere). The court will evaluate both the private interests of the parties and the public interests such as efficiency and fairness. *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000). "[A] court may not transfer a case 'from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff.'" *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 11 (D.D.C. 2007) (citation omitted). Under 28 U.S.C. § 1404(a), the Court has recognized that the movant has the "heavy burden" of demonstrating transfer is appropriate. *Boland v. Fortis Constr. Co., LLC*, 796 F. Supp. 2d 80, 91 (D.D.C. 2011) (citation omitted).

## IV.    ARGUMENT

The Court should deny Intervenors' Motion to Transfer to the District of Oregon. A lawsuit challenging the Biological Opinion and implementation thereof involving two federal agencies

located in and around Washington, D.C should stay in the District of Columbia. Both Oregonians for Floodplain Protection and National Association of Home Builders of the United States are headquartered in Washington, D.C., and Federal Defendants also reside here. OFP's choice of an unquestionably proper forum where OFP, the Federal Defendants, and at least one Intervenor, are at home is entitled to substantial deference, particularly in an APA action that will be decided on the administrative record. While OFP does not dispute that this case could have been brought in the District of Oregon, OFP chose to file in the District of Columbia. Intervenors have not met their burden to overcome the strong presumption in favor of OFP's' choice of forum. They ignore the national significance of this controversy and fail to show that the public and private interest factors weigh in their favor. Intervenors' motion should be denied.

### A.    The Private Interest Factors Weigh in Favor of the District of Columbia.

OFP's choice of venue is entitled to substantial deference. *Air Line Pilots Ass'n v. E. Air Lines*, 672 F. Supp. 525, 526 (D.D.C. 1987). This presumption is only overcome if the party favoring transfer can show that plaintiffs' choice of "forum has no meaningful ties to the controversy and no particular interests in the parties or subject matter." *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 165 (D.D.C. 1995) (citation omitted). The private interest factors include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of witnesses; and (6) the ease of access to sources of proof. *Trout Unlimited*, 944 F. Supp. at 16 (citations omitted).

### 1.    OFP's Choice of Forum Is Entitled to Substantial Deference.

The first and third private-interest factors clearly weigh in favor of remaining in the District of Columbia. The "plaintiff[s'] choice of forum is normally to be preferred" unless maintaining the action in the original court "will make litigation oppressively expensive, inconvenient, difficult or harassing to defend." *Oceana v. Bureau of Ocean Energy Mgmt.*, 962 F. Supp. 2d 70, 73 (D.D.C.

2013) (quoting *Starnes v. McGuire*, 512 F.2d 918, 927 (D.C. Cir. 1974) (en banc)). Moreover, Federal Defendants have opposed transferring venue from this forum.  ECF 29.

OFP's' home forum is the District of Columbia. Intervenors attempt to side-step this fact by arguing that "OFP's impacted members do not work or live in the District of Columbia" and that their "only" connection to the District of Columbia is that it was formed in D.C. ECF 26-1 at 16. A corporation is considered the resident of the state in which it is incorporated. *See* 28 U.S.C. § 1332(c)(1). Additionally, as Intervenors admit, National Association of Homebuilders is a "national trade organization with its principal place of business in Washington D.C." ECF 26-1 at 16. The residency of *one* plaintiff "is sufficient to tip the balance in favor of this Court's strong presumption in favor of venue in this District." *Van Antwerp*, 523 F. Supp. 2d at 11–12. Here, *both* Oregonians for Floodplain Protection and National Association of Homebuilders are residents and headquartered in the District of Columbia. *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 129 (D.D.C. 2001); *Van Antwerp*, 523 F. Supp. 2d at 11; *see also Ctr. for Biological Diversity v. Ross*, 310 F. Supp. 3d 119, 125 (D.D.C. 2018) ("When a plaintiff brings suit in its home forum, that choice is afforded 'substantial deference.' That is so even when all plaintiffs do not reside in the chosen forum.") (quoting *Wilderness Soc'y*, 104 F. Supp. 2d at 12).

Intervenors claim that "the operative events associated with OFP's claims occurred outside of the District of Columbia," and therefore transfer is warranted. ECF 26-1 at 16. Intervenors misstate the standard—it is not whether it is the plaintiffs' home forum *and* whether the forum has a strong connection to the claims asserted—but it is *either* the plaintiffs' home forum *or* the forum has a strong connection to the claims asserted. *Nat'l Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173, 179-80 (D.D.C. 2009). For this reason, Intervenors' reliance on *Center for Biological Diversity v. U.S. Forest Service*, No. 24-cv-87, 2024 WL 2299642, at *3 (D.D.C. May 21, 2024)

is misplaced. In that case the court found that "[n]one of the six plaintiffs are headquartered in this district." *Id.* at *2. Similarly, *Defenders of Wildlife v. Jewel*, 74 F. Supp. 3d 77, 85 (D.D.C. 2014), does not compel a different result. There, only one of three plaintiffs were headquartered in Washington, D.C. *Id.* Here, all plaintiffs are residents of this district and courts "are presumed to have an interest in suits involving their residents." *Oceana, Inc. v. Pritzker*, 58 F. Supp. 3d 2, 5 (D.D.C. 2013).

In addition, contrary to Intervenors' argument, the significant and ongoing involvement of FEMA's HQ in decisions related to the Biological Opinion and FEMA's efforts related to implementation of the RPA also supports this case remaining in the District of Columbia. "[T]he mere fact that a case concerns the application of a federal statute by a federal agency" is not, of course, enough to "provide a sufficient nexus to the District of Columbia to weigh against transfer." *Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 55 (D.D.C. 2012) (citation omitted). But "heavy," "personal involvement" by District-based government officials, such as occurred here, provides a "link between this controversy and the District of Columbia," even if the case "will have an impact on the residents" of another state. *Wilderness Soc'y*, 104 F. Supp. 2d at 13-14.

Intervenors fail to recognize that FEMA HQ has been heavily involved in discussions/ negotiations with NMFS regarding the content of the RPA, as well as decisions regarding implementation of the RPA and PICMs. The involvement of FEMA HQ can be traced back to July 29, 2010, when FEMA HQ officials initiated ESA consultation with NMFS. Third Lawrence Decl. Ex. Q (Letter from FEMA HQ official to NMFS). While FEMA Region X and NMFS's West Coast Region, both of which represent multiple western states, were engaged in the details of the consultation, Third Lawrence Decl. Ex. R.  FEMA HQ took the lead in raising concerns regarding

NMFS's proposed RPA.[1] *See, e.g.*, Third Lawrence Decl. Ex. S. Beginning May 29, 2014, FEMA HQ explained to NMFS that "certain elements of the proposed RPA conflict with the statutory purpose and language of the National Flood Insurance Act of 1968 ("NFIA"), require actions outside of FEMA's authority, and are not economically, technologically, or practically feasible." *Id.* FEMA HQ noted that the RPA would require policy changes on a national level, require agency rulemaking, and would require FEMA to take action outside the scope of its authority. *Id.* FEMA HQ reiterated the concerns raised by Region X on January 14, 2015, and June 3, 2015, and sent their own letters on September 9, 2015, and January 1, 2016. *See* Third Lawrence Decl. Exs. T at 1, U. FEMA and NMFS attempted to come to an agreement regarding the RPA, but FEMA HQ continued to express concerns related to the national scope of the actions proposed by NMFS in the RPA. Third Lawrence Decl. Exs. T at 1, U.

Despite FEMA HQ's repeated expressions of concern, in 2016 NMFS nevertheless went ahead and issued the Biological Opinion and RPA. Following its issuance, FEMA HQ continued to raise concerns with NMFS regarding NMFS's jeopardy determination and its ability to implement the RPA. Third Lawrence Decl. Ex. V. Indeed, FEMA's Draft Oregon Implementation Plan for NFIP-ESA Integration, published in October 2021, reiterates FEMA HQ's significant concerns with NMFS's RPA and proposes an alternative approach. FEMA, Oregon Implementation Plan for NFIP-ESA Integration (Draft Oct. 2021), *available at* https://www.fema.gov/sites/default/files/documents/fema_draft-oregon-implementation-plan_10052021.pdf. FEMA HQ notified NMFS that FEMA was seeking a delay in implementation of the RPA to conduct NEPA review regarding its proposed implementation actions. *See* Notice

---

[1] As Intervenors admit, both of these regional offices "are located in the State of Washington." ECF 26-1 at 18. This fact does not support transfer to *Oregon.*

of Suppl. Fact, Ex. 2, *Oregonians I*, 17-cv-01179-RJL, ECF 25-2. And FEMA HQ has been directly involved in the pilot studies undertaken in response to RPA Element 3, as the outcome will impact how FEMA does floodplain mapping nationwide. Third Lawrence Decl. Ex. W (Memorandum, Pilot Studies regarding the Applicability of the 2016 Oregon Biological Opinion RPAs).

FEMA HQ's involvement was not limited to expressing concern regarding the RPA. FEMA HQ also signed off on the development of the PICMs, including suspension of Conditional Letters Of Map Revisions Based on Fill ("CLOMR-Fs") and Letters Of Map Revisions Based on Fill "(LOMR-Fs"). Third Lawrence Decl. Ex. X (Region X's Request to Delay CLOMR/LOMR Processing). FEMA HQ has also been considering rulemaking to integrate the ESA into the NFIP,[2] and several commenters—including Intervenor Center for Biological Diversity—cited to the Oregon Biological Opinion and the RPA as providing a foundation for those changes. Third Lawrence Decl. Ex. Y at 9599; *see also* Third Lawrence Decl. Ex. Z (FEMA table identifying comments submitted in response to FEMA's Request for Information, (FEMA-2021-0024) that were related to FEMA Region X and the ESA). Overall, FEMA HQ has directed the Region X's response to the RPA, as well as plans for integrating the ESA and NFIP generally. Intervenors wholly disregard this multifaceted and continuous engagement by FEMA HQ. Third Lawrence Decl. Exs. AA (FEMA HQ discussing Decisional Memorandum), P (Documentation of Decision-Making Rationale for the Implementation of interim Endangered Species Act compliance requirements for NFIP participating communities in Oregon). Additionally, FEMA HQ has been

---

[2] *See* Request for Information on the National Flood Insurance Program's Floodplain Management Standards for Land Management and Use, and an Assessment of the Program's Impact on Threatened and Endangered Species and Their Habitats, 86 Fed. Reg. 56,713, 56,718 (Oct. 12, 2021) (hereinafter "RFI").

Pls.' Opp'n to Def.-Intervenors' Mot. to Transfer – 10
*Oregonians for Floodplain Protection et al. v. Dep't of Commerce et al.*, No. 1:25-cv-39-JMC

the entity responding to concerns from Congressional members related to the Biological Opinion and PICMs. *See* ECF 12-15; *see also* Press Release, Bonamici Leads Majority of Oregon Delegation in Calling for Pause of FEMA BiOp Implementation (Dec. 13, 2024), https://bonamici.house.gov/media/press-releases/bonamici-leads-majority-oregon-delegation-calling-pause-fema-biop. FEMA Administrator, Pete Gaynor, stated to Congress that "[c]hanging FEMA's regulations to accommodate the requirements of the RPA in Oregon will not only impact how FEMA administers the NFIP in Oregon, but across the nation for all 22,000 communities that participate in the NFIP." ECF 12-14 at 1. FEMA HQ's involvement was not a mere rubberstamping of FEMA Region X's activities; it was part of coordinated effort to form a national approach to integrating the NFIP with ESA obligations. *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d at 128-29 (finding that a case involving federal statutes and federal officials within the District of Columbia regarding the issuance of a grazing permit warranted a sufficient nexus to the District). Intervenors' argument discounting the significant role of FEMA HQ in the development and implementation of the Biological Opinion is misguided.

Moreover, this case involves issues of national importance—FEMA's authority to thrust ESA compliance on local jurisdictions. First, although the Biological Opinion only evaluates the effects of the NFIP in Oregon, NMFS's RPA directs FEMA to change the NFIP nationwide. Asmus Decl. ¶ 15. RPA Element 3 directs FEMA to expand the areas currently mapped within the Special Flood Hazard Areas, to map Riverine Erosion Zones, to depict High Hazard Areas on Flood Insurance Risk Maps, to depict the Area of Future Conditions Flood Hazard, and to map residual flood hazards and risks behind levees. These directives apply nationwide and are not limited to just Oregon. Biological Opinion at 284-85. RPA Element 4 directs that once "flood risks are mapped," FEMA adopt new, additional "restrictive land use and development standards" that

would apply nationwide, not just in Oregon. *Id.* at 286. RPA Element 4 directs FEMA to revise its regulations at 44 C.F.R. pt. 60 to "incorporate an ESA performance standard into the regulatory floodplain management criteria as a condition of NFIP eligibility." *Id.* at 288. Thus, these amendments would not just impact Oregon NFIP-participating communities and developers, but any NFIP-participating community in the United States. Intervenors cannot avoid the plain language of the Biological Opinion and RPA elements.

FEMA's PICMs also have national implications. As part of the PICMs, FEMA has suspended processing LOMR-Fs and CLOMR-Fs in Oregon, but this is not unique to Oregon. Asmus Decl. ¶ 16. On August 13, 2020, FEMA announced that it would suspend LOMR-Fs and CLOMR-Fs in Los Angeles, Orange, San Diego, San Louis Obispo, Santa Barbara, and Ventura Counties in California. *Id.* Three years later, on May 24, 2023, FEMA expanded this suspension to include 38 California counties. *Id.* ¶ 17. FEMA's suspension of LOMRs and CLOMRs based on fill in California remains in effect. *Id.* In this suit, OFP challenges FEMA's authority to suspend processing LOMR-Fs and CLOMR-Fs without first changing their mapping regulations (44 C.F.R. pts. 65 and 72). A decision on this issue in this case will resonate to the California suspension as well.

The combination of OFP's choice of its home forum, the decision making at the national level, and the national implications strongly outweigh any local nature of the controversy.

### 2. The Remaining Private Interest Factors Support Remaining in This District.

None of the remaining private-interest factors: (1) defendants' choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; and (4) access to evidence, support transfer. First, Federal Defendants oppose the transfer of this case from this District. ECF 29. Additionally, this District is convenient for Federal Defendants as they are headquartered in

the District of Columbia or the District of Maryland and represented by U.S. Department of Justice, which is located in this District. OFP's attorneys are located in this District or in Seattle, and Intervenors' attorneys are admitted to practice in this District. Given that both Federal Defendants and OFP find the District of Columbia convenient, the "slight private benefit to the potential convenience" of an intervenor is "not enough to overcome the weight that must be accorded the plaintiffs' choice of forum." *Neighbors Against Bison Slaughter v. Nat'l Park Serv.*, No. 19-cv-3144, 2019 WL 6035356, at *6 (D.D.C. Nov. 14, 2019) (finding that although the State of Montana's potential intervention was not "far-fetched" their participation as an intervenor was not enough to support transfer).

Because this is a case that will largely be based on the administrative record, the convenience of witnesses and ease of access to evidence do not justify any transfer consideration. *Pres. Soc'y of Charleston*, 893 F. Supp. 2d at 56. OFP's constitutional claims do not tip the scale in Intervenors' favor either because in addition to an electronic administrative record, discovery (if any) would be conducted electronically, and this case is one that is likely to be resolved on summary judgment. *Sec. & Exch. Comm'n v. RPM Int'l, Inc.*, 223 F. Supp. 3d 110, 116 (D.D.C. 2016). OFP's constitutional claims will also help shape what FEMA can or cannot do in developing ESA-related regulations in the future. Overall, Intervenors have failed to demonstrate that the remaining private-interest factors overcome OFP's strong presumption of litigating in its home forum.

### B.   The Public Interest Factors Do Not Support Transfer.

The public interest factors do not favor transfer either. These factors include: (1) the local interest in deciding local controversies; (2) the potential transferee court's familiarity with the applicable law; and (3) the relative congestion of the transferee and transferor courts. *Trout Unlimited*, 944 F. Supp. at 16. There is no "local" controversy and, while the District of Oregon

can resolve this case, the District of Columbia is well versed in resolving challenges to biological opinions and APA claims arising from locations around the country.[3] *See, e.g., Oceana v. Bureau of Ocean Energy Mgmt.*, 962 F. Supp. 2d at 78 ("[i]t is of course well settled that no federal court is more competent than any other to resolve questions of federal law"); *Stand Up for California! v. U.S. Dep't of the Interior*, 919 F. Supp. 2d 51, 64 n.14 (D.D.C. 2013) ("this Court is equally competent to adjudicate federal questions as any other federal district court") (citation omitted); *Cloud Found. v. Salazar*, 738 F. Supp. 2d 42, 46 (D.D.C. 2010) ("the District of Columbia District Court has developed considerable familiarity with the federal administrative procedure and environmental statutes at issue here") (citation omitted). Accordingly, this case should remain in the District of Columbia.

### 1.    This Case Implicates National Rather than Purely Local Interests.

To determine whether a controversy is local in nature, courts consider a wide variety of factors, including: where the challenged decision was made; whether the decision directly affected the citizens of the transferee state; the location of the controversy; whether the issue involved federal constitutional issues rather than local property laws or statutes; whether the controversy involved issues of state law; whether the controversy has some national significance; and whether there was personal involvement by a District of Columbia official. *Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 49 (D.D.C. 2006).

---

[3] *See, e.g., Pub. Emps. for Envtl. Resp. v. Beaudreau*, 25 F. Supp. 3d 67 (D.D.C. 2014) (challenging biological opinion for the Cape Wind project off Massachusetts); *Nat'l Wildlife Fed'n v. Norton*, 332 F. Supp. 2d 170 (D.D.C. 2004) (challenging biological opinion for a proposed limestone mine in Florida); *Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 538 F. Supp. 2d 242 (D.D.C. 2008) (challenging biological opinion for the proposed breach of a sand bar separating two lakes in California from Pacific Ocean); *Ocean Conservancy v. Gutierrez*, 394 F. Supp. 2d 147 (D.D.C. 2005).

Intervenors' focus on the harms alleged in OFP's declarations misses the point. ECF 26-1 at 11. OFP's declarations demonstrate the real and irreparable harm that OFP—and other NFIP participating communities and floodplain property owners and tenants in Oregon—are currently suffering as a result of FEMA's PICMs. Plaintiffs often raise issues of national importance based on the particularized harms of an administrative decision—that much is required to allege and prove Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (standing requires "concrete and particularized" harm). OFP has requested that this Court temporally enjoin the PICMs to suspend those harms. To make that request, OFP necessarily focused on the harms occurring in Oregon, but that does not make this current action one of purely local interest. *See, e.g.*, *Oceana, Inc. v. Pritzker*, 58 F. Supp. 3d at 9 (denying transfer where fisheries decision had "profound[]" local impacts but the consequences of the case would have broader impacts under the administrative scheme). Moreover, the declaration from National Association of Homebuilders specifically filed with this Response documents the harm that has been and would be experienced nationwide by National Association of Homebuilders and its members if FEMA undertakes changes to the NFIP nationwide (through rulemaking or guidance) in response to this Biological Opinion and RPA. Asmus Decl. ¶¶ 18-21, 24-29. Finally, while OFP raises inconsistency between the PICMs and Oregon land use law, that is for the purpose of demonstrating harm, and OFP does not bring any state law claims.

The extensive involvement by FEMA HQ around the development of the RPA, FEMA's Implementation Plan, and development and implement of the PICMs makes it clear that FEMA considers the implications of the Oregon Biological Opinion and RPA to be national. *See supra* Section IV.A.1. Similarly, the myriad of references to the Biological Opinion and RPA in comments responding to FEMA HQ's "Request for Information" about potential nationwide

rulemaking to integrate the ESA into the NFIP signal the general sentiment that this Biological

Opinion and FEMA's implementation of it has national implications *See, e.g.*, Third Lawrence

Decl Exs. Y, Z. OFP anticipates that if Federal Defendants are successful in defending the

Biological Opinion and its implementation in this case, Intervenors will rely on that success to

carry the ESA into the NFIP in FEMA Regions around the country. *See, e.g.*, *Nat'l Wildlife Fed'n*

*v. FEMA*, 345 F. Supp. 2d 1151 (W.D. Wash. 2004); *Ecological Rights Found. v. FEMA*, 384 F.

Supp. 3d 1111 (N.D. Cal. 2019).

Accordingly, this case involves a "'question[] of national policy or national significance.'"

*Stewart v. Azar*, 308 F. Supp. 3d 239, 249 (D.D.C. 2018) (quoting *Oceana, Inc. v. Pritzker*, 58 F.

Supp. 3d at 9). Because this action raises legal and policy questions of national significance, the

local interest in deciding this case in Oregon cannot "deprive Plaintiffs of their prerogative to

choose where they will sue." *Oceana, Inc. v. Pritzker*, 58 F. Supp. 3d at 9. For example, in *Greater*

*Yellowstone Coalition v. Kempthorne*, which involved regulation of snowmobile use in

Yellowstone, the Court stated that "Plaintiffs' ties to the District of Columbia . . . and the national

scope of the environmental issues at stake," among other factors, counseled against transfer, and

that "[t]he management of the National Parks and the interpretation of federal environmental

statutes are nationwide concerns," not localized controversies. No. 07-cv-2111, 2008 WL

1862298, at *7 (D.D.C. Apr. 24, 2008) (citation omitted). Likewise in *Wilderness Society*, the

court declined to transfer a case from the D.C. District involving oil and gas leasing in Alaska

because it was "not a local dispute affecting only the local residents of the Northern Slope of

Alaska," but instead "affect[ed] a national energy reserve the management of which ha[d] received

national attention." 104 F. Supp. 2d at 17. Merely because citizens of Oregon may have an interest

in this outcome, they are not the only ones affected by Federal Defendants' actions. *Ass'n of Wash.*

*Bus. v. EPA*, No. 23-cv-3605, 2024 WL 3225937, at *10 (D.D.C. June 28, 2024) (noting that

although an EPA issued rule regulated Washington waters alone, the neighboring States of Idaho

and Oregon were potentially affected and declining to transfer). FEMA's changes to the NFIP to

respond to the RPA will apply nationwide, not just in Oregon *Id.*; RFI, 86 Fed. Reg. at 56,718;

Third Lawrence Decl. Ex. W. Accordingly, whether Federal Defendants' Biological Opinion and

RPA implementation is consistent with the ESA and NFIA in this case "will thus bear on the effort

to adopt this interpretation nationwide." *Ass'n of Washington Business*, 2024 WL 3225937, at *10

(emphasizing that the *effects* of a court decision will "spill beyond Washington and reach the

Agency's efforts to adopt its treaty-rights interpretation nationwide.")

### 2.    The Remaining Public Interests Factors Do Not Support Transfer.

Familiarity of the Courts does not justify transferring venue. "The relevant inquiry is not

whether a certain court is familiar with the 'factual and legal history' of a case, but whether it is

more familiar with the 'governing laws.'" *Ctr. for Biological Diversity v. Ross*, 310 F. Supp. 3d at

126 (quoting *Trout Unlimited*, 944 F. Supp. at 17). When "both courts are competent to interpret

the federal statutes involved . . . there is no reason to transfer or not transfer based on this

factor." *Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d at 49. If anything, this Court arguably

"has more experience with APA cases," slightly weighing against transfer. *Stewart*, 308 F. Supp.

3d at 248 (citation omitted).

Intervenors' discussion of the pending Oregon case is not persuasive. While a pending

related action in a transferee forum *could* support a decision to transfer a case to that forum, it does

not compel a court to do so. For example, in *Greater Yellowstone Coalition v. Bosworth*, the court

declined to transfer a case to the District of Montana to the judge there who was overseeing a

potentially related case. 180 F. Supp. 2d at 129-30. The Court distinguished the two cases noting

they were "very different" because one case focused "on the impact of the Horse Butte Capture

Facility on eagles and other birds, whereas this case focuses on the reissuance of the Horse Butte grazing permit and addresses its effect on the bison." *Id.* While the Court's decision on the issues in this case may inform the court's decision in Intervenors' suit in Oregon District Court, the two cases do not involve the same claims.

The risk of inconsistent legal obligations here is low. First, in each of the cases, the plaintiffs request different forms of relief—one is to compel agency action and the other challenges agency authority. In *Nw. Envtl. Def. Ctr.*, No. 3:23-cv-01335-SI, plaintiffs argue that FEMA has failed implement the RPA or protective measures for the implementation of the NFIP, and FEMA has unlawfully delayed or unreasonably withheld taking action in compliance with the ESA. In this case, OFP challenges the legality of the Biological Opinion, FEMA's authority to implement NMFS's RPA, and FEMA's failure to conduct APA rulemaking and environmental review pursuant to NEPA prior imposing the PICMs. Any order in the *Nw. Envtl. Def. Ctr.*, No. 3:23-cv-01335-SI, will not determine the lawfulness of FEMA's actions in this case. Further, because FEMA and Intervenors have bifurcated the proceeding in Oregon District Court, even if the Oregon District Court finds FEMA liable under the ESA, no schedule has yet been set for briefing on remedy, and it can be reasonably assumed that briefing would not occur until after a decision on the Motion for Preliminary Injunction in this case and perhaps a full decision on the merits. Those rulings would likely inform the Oregon District Court's action. Transferring this case would not alter those relationships and would likely only serve to further extend the harm currently being experienced by OFP in this suit. To transfer the case now, would create inefficiency and work at cross-purposes with the interest of justice.

Lastly, judicial economy does not weigh in favor of transfer because neither forum is "'substantially more congested' than the other." *Ctr. for Biological Diversity v. Ross*, 310 F. Supp.

3d at 126-27 (quoting *Nat'l Ass'n of Home Builders*, 675 F. Supp. 2d at 178). While Intervenors

cite statistics published by Administrative Office of U.S. Courts, they appear to reference incorrect

information. Intervenors state that "According to the September 2024 Federal Judicial Caseload

Statistics report, the median time from filing to disposition of civil cases in the District of Columbia

was 13.7 months, while the total number of pending cases per judgeship was 937." ECF 26-1 at

15. However, those statistics are for the national profile—not the District of Columbia. Third

Lawrence Decl. Ex. BB. In the District of Columbia, the median time from filing to disposition is

6.2 months and there are only an average of 438 cases per judgeship. This is *lower* than Oregon,

which is 10.2 months and 515, respectively. OFP submits that this Court's familiarity and dispatch

with administrative law cases render this District a preferable forum. In any event, Intervenors

cannot rely on this factor to carry its burden on the Motion.

## V.     CONCLUSION

Intervenors have failed to meet their heavy burden of proving why transfer to the District

of Oregon is appropriate and would serve the interests of justice. The Court should therefore deny

Intervenors' Motion.

Dated this 7th day of March 2025.

VAN NESS FELDMAN, LLP

/s/ *Molly Lawrence*
Molly Lawrence, WA Bar No. 28236
                    D.D.C. Bar No. WA0003
Sophia E. Amberson, WA Bar No. 52528
                        *Pro Hac Vice*
1191 Second Avenue
Suite 1800
Seattle, WA 98101
Tel.: 206.623.9372
Email: mol@vnf.com
            samberson@vnf.com

Tyson C. Kade, DC Bar No. 1018014
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
Tel.: 202.298.1800
Email: tck@vnf.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March, 2025, a true and correct copy of the foregoing was filed using the Court's CM/ECF filing system, which shall send notice to all counsel of record.

/s/ *Molly Lawrence*
Molly Lawrence