IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OREGONIANS FOR FLOODPLAIN PROTECTION et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF COMMERCE et al., <br><br> Defendants, <br><br> NORTHWEST ENVIRONMENTAL DEFENSE CENTER et al., <br><br> Defendant-Intervenors. | Case No. 1:25-cv-39-JMC <br><br> **PLAINTIFFS' REPLY TO DEFENDANT-INTERVENORS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

## I.    INTRODUCTION

In their belated response, Northwest Environmental Defense Center et al. ("Intervenors") offer no additional rationale or justification that would warrant denying Oregonians for Floodplain Protection and the National Association of Homebuilder's (collectively, "OFP") motion for preliminary injunction. Instead, Intervenors largely echo the arguments that the Federal Defendants raised and which OFP has already rebutted. *See* ECF 6-1, 18.

Notably, Intervenors have offered no defense to OFP's arguments that the Federal Emergency Management Agency ("FEMA") failed to comply with its obligations under the Administrative Procedure Act ("APA") and National Environmental Policy Act ("NEPA") prior to imposing the Pre-Implementation Compliance Measures ("PICMs") on Oregon communities that participate in the National Flood Insurance Program ("NFIP"). Indeed, Intervenors explicitly state that they "take no position as to whether FEMA violated the APA when it adopted the PICMs without notice and comment," ECF 27 at 4, and Intervenors make no mention of NEPA. Instead,

Intervenors unavailingly attempt to deflect the Court's attention to statements and findings that are immaterial to the resolution of the issues currently pending before this Court on this Motion.

With respect to irreparable harm, Intervenors attempt to minimize the impacts of the PICMs on OFP and its members by characterizing them as self-inflicted injuries that should have been apparent nine years ago when the National Marine Fisheries Service issued its Biological Opinion. *Id.* at 8-16. Intervenors ignore that OFP sought to challenge that Biological Opinion in this Court immediately after its issuance, *see Oregonians for Floodplain Prot. v. U.S. Dep't of Com.*, 334 F. Supp. 3d 66 (D.D.C. 2018) ("*Oregonians I*"), the subsequent efforts by OFP and its members to work with FEMA to develop appropriate and legally viable alternatives to the Biological Opinion's reasonable and prudent alternative ("RPA"), and the fact that FEMA's implementation plans, most recently regarding the PICMs, have been and remain a "moving target." Rather than being speculative and non-imminent, OFP submitted numerous declarations demonstrating a variety of concrete and significant harms that are presently occurring as a result of FEMA's imposition of the PICMs.

Like the Federal Defendants, Intervenors argue that the balance of equities and public interest justifies denial of the Motion because FEMA's actions purportedly benefit species listed under the Endangered Species Act ("ESA"). However, no court has held that a federal agency can ignore its statutory obligations and procedural requirements simply because an ESA-listed species is implicated. Instead, the prevailing public interest is ensuring that federal agencies follow the law, and FEMA failed to do that when it imposed the PICMs on Oregon NFIP-participating communities.

## II.   ARGUMENT

**A.   Intervenors Do Not Contest Plaintiffs' Merits Arguments Supporting Issuance of a Preliminary Injunction.**

Intervenors fail to offer any response to OFP's arguments demonstrating a likelihood of success on the merits of the claims raised in support of the Motion for Preliminary Injunction.[1] ECF 6-1 at 17-30. Instead, Intervenors only posit that FEMA has statutory authority under the NFIA and ESA to implement measures that benefit ESA-listed species. ECF 27 at 4-8. This issue has not been raised or briefed as a basis for the requested preliminary injunction, and it is not presently before the Court.

In support of its Motion, OFP raised two substantive arguments. First, OFP demonstrated that FEMA violated the APA when it imposed the PICMs on Oregon NFIP-participating communities. ECF 6-1 at 20-26. FEMA unilaterally reinterpreted 44 C.F.R. § 60.3(a)(2) to authorize the imposition of a "no net loss" standard on floodplain development ("De Facto Amendment") without adhering to the APA's requirements for notice-and-comment rulemaking. FEMA also violated the APA when it suspended the processing of Conditional Letters of Map Revisions Based on Fill and Letters of Map Revisions Based on Fill in contravention of its existing regulations. Intervenors merely respond that they "take no position as to whether FEMA violated the APA when it adopted the PICMs without notice and comment." ECF 27 at 4.

Second, OFP demonstrated that FEMA violated NEPA by failing to conduct any analysis or environmental review of the De Facto Amendment and the PICMs prior to their imposition on

---

[1] As OFP has expressly stated, it is only raising a subset of its claims here, and reserving the remainder for the subsequent briefing on a motion for summary judgment. ECF 6-1 at 3; ECF 18 at 2 n.1.

Pls.' Reply to Def.-Intervenors in Supp. of Mot. for Prelim. Inj. - 3
*Oregonians for Floodplain Protection et al. v. Dep't of Commerce et al.*, No. 1:25-cv-39-JMC

Oregon NFIP-participating communities. ECF 6-1 at 26-30. Despite acknowledging this argument, ECF 27 at 2-3, Intervenors provide no response.

Instead of responding to or rebutting OFP's arguments regarding FEMA's violations of the APA and NEPA, Intervenors obfuscatorily raise issues that are irrelevant to this Court's consideration of OFP's likelihood of success on the merits for preliminary injunctive relief. Intervenors largely focus their efforts on arguing that FEMA has authority under the National Flood Insurance Act ("NFIA") to act for the benefit of ESA-listed species. ECF 27 at 4-8. OFP has not raised this issue with respect to the requested preliminary injunction, and has reserved this argument for subsequent briefing on a motion for summary judgment. However, to the extent Intervenors try to rely on prior cases regarding the scope of FEMA's discretion under the NFIA, those decisions were limited to the question of whether FEMA is required to conduct Section 7 consultation pursuant to the ESA. ECF 27 at 4 (citing *Nat'l Wildlife Fed'n v. FEMA*, 345 F. Supp. 2d 1151, 1172-73 (W.D. Wash. 2004); *Fla. Key Deer v. Stickney*, 864 F. Supp. 1222, 1240 (S.D. Fla. 1994); *Coal. for a Sustainable Delta v. FEMA*, 812 F. Supp. 2d 1089, 1122–23 (E.D. Cal. 2011); *Ecological Rights Found. v. FEMA*, 384 F. Supp. 3d 1111, 1120–21 (N.D. Cal. 2019)). These decisions do not address whether the biological opinion's RPA can be implemented within the scope of FEMA's authority under the NFIA or whether FEMA is required to revise its existing regulations in order to accommodate and implement the RPA provisions. In addition, Intervenors prematurely attempt to defend RPA elements other than the interim measures that FEMA is implementing through the PICMs. ECF 27 at 7-8. The other RPA elements are not currently before the Court or relevant to this Motion, and OFP will address the broader defects of the RPA in its forthcoming summary judgment briefing. Accordingly, Intervenors have completely failed

to address or rebut OFP's merits-based arguments justifying the imposition of a preliminary injunction.

B.  **Intervenors Fail to Rebut that OFP and Its Members Are Suffering Irreparable Harm Without a Preliminary Injunction.**

Intervenors focus the bulk of their briefing on asserting that OFP's claims of irreparable harm are speculative and not imminent. *Id.* at 8-16. Intervenors are wrong. In support of its Motion for Preliminary Injunction, OFP provided numerous declarations demonstrating the scope and magnitude of harms that have been and are currently being suffered by it and its members due to FEMA's unlawful imposition of the PICMs.

Intervenors start by asserting that "some of Plaintiffs' alleged harms" are attributable to OFP and its members' "inaction." *Id.* at 9-10. Intervenors' point is meritless, and OFP has already rebutted this argument. ECF 18 at 16-19. Notwithstanding, Intervenors unavailingly assert that "absent from Plaintiffs' declaration [sic] is any statement that they have sought to issue these notices or undertake these procedures" to comply with Oregon's land use laws. ECF 27 at 10. To the contrary, as OFP has explained, while the PICMs were announced on July 15, 2024, FEMA did not begin providing technical assistance regarding their implementation for several months. ECF 18 at 17. Intervenors also ignore that throughout the alleged "technical assistance" period, FEMA continued to revise the PICM requirements and issued a further revised draft of the proposed PICM model ordinance on November 27, 2024, four days before the implementation deadline. *Id*. And, in separate litigation, FEMA has conceded that it may continue to revise the model ordinance and habitat assessment guide going forward as the PICMs are implemented. Defs.' Reply Mem. in Supp. of Defs.' Cross-Mot. for Summ. J at 5, *Nw. Envtl. Def. Ctr. v. FEMA*, No. 23-cv-01335-SI (D. Or. Nov. 19, 2024), ECF 31. It is axiomatic that regulated entities cannot begin to comply with any imposed requirements until those measures are final and adequately

explained. As OFP's declarants document, it was FEMA's delay in issuing definitive guidance that precluded reciprocal action by the respective NFIP-participating communities. *E.g.*, Henrikson Decl. ¶¶ 10, 17; Hinkelman Decl. ¶ 12.

Next, Intervenors allege that OFP's injuries are somehow "self-inflicted." ECF 27 at 10. Like the Federal Defendants, Intervenors would simply have OFP's members implement the PICMs in contravention of Oregon law. To do so, Oregon NFIP-participating communities would be forced to violate ORS 215.503, which requires written notice to each affected property owner before changes are made to a community's floodplain development code. Absher Decl. ¶ 29; Henrikson Decl. ¶ 24; Balensifer Decl. ¶ 20; Hinkelman Decl. ¶ 13. Further, current land use codes do not authorize the imposition of the mitigation measures "required" by FEMA's habitat assessment guidance for the permit-by-permit approach of PICM Pathway 2, the default alternative that FEMA applied to many communities. Absher Decl. ¶ 29; Henrikson Decl. ¶ 24; Balensifer Decl. ¶ 20; Hinkelman Decl. ¶ 13. And, as OFP detailed, the PICMs are inconsistent with several other provisions of Oregon land use law. Absher Decl. ¶¶ 29-38; Henrikson Decl. ¶¶ 24-27; Balensifer Decl. ¶¶ 19-22; Hinkelman Decl. ¶¶ 13-18. Contrary to Intervenors' dismissal of these issues as merely "speculative," ECF 27 at 12, OFP has demonstrated that actual liability and damages would likely follow any failure to comply with Oregon law prior to implementing the PICMs. Absher Decl. ¶ 31; ECF 4-10 (DLCD FAQ); ECF 4-11 (OPOA Memorandum); ECF 4-12 (OPOA Letter to Clatsop County).

Tellingly, Intervenors ignore the injuries to Oregon NFIP-participating communities associated with the expenditure of considerable time, effort, and expense in attempting to understand and comply with the PICMs. Henrikson Decl. ¶ 18; Absher Decl. ¶ 53; Balensifer Decl. ¶ 27. Given these additional burdens, communities have had to defer other planning work

important to and required for their communities and are having to expend additional funds to hire third-party consultants to review habitat assessments. Absher Decl. ¶ 53; Henrikson Decl. ¶ 23. The PICM requirements have forced Oregon NFIP-participating communities to forego community infrastructure projects, including those intended to improve conditions for ESA-listed species. *E.g.*, Absher Decl. ¶¶ 45, 51.

Intervenors then disparage the potential exposure of Oregon NFIP-participating communities to Measure 49 damages. ECF 27 at 10-11. While the Oregon Department of Land Conservation and Development ("DLCD") suggests that it may be "unlikely" that a city or county would have to pay compensation to a landowner, DCLD recognizes that Measure 49 would apply in some circumstances. ECF 4-10 at 8. Indeed, DCLD details how such a claim would arise under each of the PICM pathways. *Id*. at 8-9. Measure 49 liability has not arisen yet because the Oregon NFIP-participating communities are in the initial stages of implementing the PICMs. Having to respond and compensate for such claims constitutes an irreparable harm attributable to FEMA's imposition of the PICMs.

Next, Intervenors summarily dismiss OFP's concerns, and the associated injuries, regarding future suspension from the NFIP. ECF 27 at 10-12. Intervenors assert that it takes FEMA six months to initiate the suspension process and that there is no evidence that FEMA has acted to suspend any OFP members yet. *Id*. at 10. However, FEMA has acknowledged that it *does* intend to suspend communities that do not select and implement a PICM from the NFIP. Graves Decl., ¶ 70. And, when FEMA does begin the enforcement process, should a community be unwilling or unable to gain compliance, "FEMA will move towards probation or suspension of the community." *Id*. ¶¶ 67-68. Through its enforcement and probation procedures, FEMA will identify failure to implement the PICMs since the implementation deadlines as a "violation" and

Pls.' Reply to Def.-Intervenors in Supp. of Mot. for Prelim. Inj. - 7
*Oregonians for Floodplain Protection et al. v. Dep't of Commerce et al.*, No. 1:25-cv-39-JMC

assert that the community must remediate such violations "to the maximum extent practicable" to maintain participation in the NFIP.  *Id*. ¶ 69; *see* FEMA, *NFIP Guidance for Conducting Community Assistance Contacts and Community Assistance Visits*, FEMA F-776, Sections 3.6, 7.2, 7.3 (Apr. 2011), *available at* https://s3-us-west-2.amazonaws.com/asfpm-library/Mentoring/FEMA_2011_guidance_conducting_community.pdf; ECF 4-26 at 11.  Thus, while Intervenors suggest that any such injury is not "imminent," ECF 27 at 12, FEMA's enforcement actions will reach back to address and remediate alleged violations for failure to implement the PICMs that have been ongoing and accruing since the PICM implementation deadlines.  Accordingly, absent a preliminary injunction of the implementation of the PICMs, OFP and its members are suffering injury because they will be required by FEMA to correct past "violations" to maintain participation in the NFIP.

Intervenors then mistakenly suggest that OFP's injuries are somehow negated because the Oregon NFIP-participating communities have been aware of pending reforms to floodplain regulations since the issuance of the 2016 Biological Opinion nine years ago.  ECF 27 at 13-14.  Intervenors posit that NFIP-participating communities should have taken timely action long ago to bring their local land use codes into compliance with the Biological Opinion.  *Id*.  Intervenors ignore the fact that OFP and other parties filed a complaint in 2017 in this Court to challenge the Biological Opinion and FEMA's implementation of the RPA.  The Court dismissed this prior suit on the grounds that the plaintiffs had not established standing, and their claims challenging interpretations in the biological assessment were not "ripe" for review.  *Oregonians I*, 334 F. Supp. 3d at 73.  OFP has long recognized that the Biological Opinion and RPA are flawed and illegal and that FEMA lacks authority to implement the RPA elements absent regulatory changes and

NEPA review. It is only now, with FEMA's imposition of the PICMs, that OFP is able to challenge these actions per this Court's *Oregonians I* decision.

Furthermore, Intervenors disregard that OFP and its members have attempted to engage and work with FEMA since at least 2016 to develop an RPA and related measures that are legally implementable. For example, Ms. Absher details how she and her staff members repeatedly raised concerns with FEMA regarding the implementation of the PICMs and how they even presented FEMA with an alternative approach, which FEMA rejected in December. Absher Decl. ¶¶ 24-28, 51. Contrary to Intervenors' false characterizations, OFP and its members have been engaged with FEMA for nine years in an attempt to understand and resolve RPA implementation issues. Moreover, in 2019, FEMA sent a letter to all affected Oregon communities informing them that FEMA was continuing to "work through" its approach to the RPA and explaining that implementation would be delayed for several years. ECF 12-14. Further, until FEMA announced the PICMs, FEMA had continuously represented to OFP and others that no changes would be required until FEMA completed the NEPA process regarding its implementation plan. ECF 12-16. In fact, as part of its decision to move ahead with the PICM, FEMA acknowledged that Oregon communities and landowners would view the decision to advance the PICMs without completing NEPA review as "a breach of good faith." ECF 12-18 at 2. To date, OFP's efforts to work with FEMA to develop a workable and legally defensible course of action in response to the RPA have been unavailing, leaving OFP no recourse but to challenge the Biological Opinion, RPA, and FEMA's unlawful efforts to impose the PICMs on NFIP-participating communities.

Intervenors argue that OFP's claims of impacts to proposed projects are "speculative and conclusory" and limited due to the PICMs "short term." ECF 20 at 14-15. Intervenors misunderstand the nature of the injuries. Even in the "short term," implementation of the PICMs

is causing injury by precluding or modifying floodplain-located projects. Absher Decl. ¶¶ 45-50; Henrikson Decl. ¶¶ 33-35; Hinkelman Decl. ¶¶ 21, 25; Watson Decl. ¶¶ 14-15, 23-26, 28-29; Riekkola Decl. ¶¶ 12-15. Rather than being "short term," FEMA has explained that the PICM model ordinance "is intended to closely represent most of the language that will be presented as Pathway A of the Draft Implementation Plan." Graves Decl. ¶ 40. Thus, Intervenors are incorrect, and the substantive requirements of the PICMs (i.e., no net loss) will be imposed beyond this interim phase as FEMA proceeds to implement the remaining RPA elements. Intervenors are also incorrect that DLCD authorizes NFIP-participating communities to add additional exemptions to the no net loss standard to floodplain development. ECF 27 at 15. FEMA, not DLCD, manages the NFIP, and FEMA has not provided the flexibility to include additional exemptions.

Finally, Intervenors attempt to dismiss the injuries to the character of NFIP-participating communities and their land use priorities. *Id.* at 15-16. As above, Intervenors incorrectly suggest that the PICMs "allow for flexibility in their application." *Id*. at 16. Further, Intervenors fail to meaningfully engage with the documented impacts of the PICMs on NFIP-participating communities' character and land use priorities. Absher Decl. ¶ 62 (farming character of Tillamook County and agricultural land use priorities); Hinkelman Decl. ¶ 26 (housing needs for growing population); Balensifer Decl. ¶ 32 (growth management objectives); Henrikson Decl. ¶ 39 (infrastructure improvements). Intervenors merely suggest that these injuries "cannot be imminent." ECF 27 at 16. Again, Intervenors are wrong and disregard the evidence presented by OFP's declarants. *E.g.*, Hinkelman Decl. ¶ 21 (ability to update wastewater treatment plant); *id*. ¶ 25 (ability to develop a hotel); Henrikson Decl. ¶ 39 (ability to develop road improvements).

Pls.' Reply to Def.-Intervenors in Supp. of Mot. for Prelim. Inj. - 10
*Oregonians for Floodplain Protection et al. v. Dep't of Commerce et al.*, No. 1:25-cv-39-JMC

C.  **The Balance of the Equities and Public Interest Favor a Preliminary Injunction.**

Intervenors incorrectly argue that Congress' enactment of the ESA automatically elevates the protection of endangered and threatened species above all other public interests. ECF 27 at 16-20. OFP recognizes that the conservation and prevention of extinction of ESA-listed species is a consideration that is in the public interest. *See id*. at 16-17 (citing *Am. Rivers*, 271 F. Supp. 2d at 261; *Conservation Law Found. v. Ross*, 422 F. Supp. 3d 12, 34 (D.D.C. 2019); *NRDC v. Evans*, 364 F. Supp. 2d 1083, 1141 (N.D. Cal. 2003)). However, both Congress and the courts have clearly established that adherence to the purposes and objectives of the ESA are subject to the requirements of other statutes, such as the APA and NEPA. *E.g.*, *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 651 (9th Cir. 2014) ("to our knowledge, there are no cases stating that an agency need not comply with NEPA because of its obligations under Section 7 of the ESA").

Intervenors concede that the "public interest in federal agencies following the law boarders on a truism." ECF 27 at 18. Yet, Intervenors myopically focus their arguments on compliance with the ESA and the status of certain species. Intervenors completely ignore that the issues before the Court on this motion only relate to FEMA's failure to comply with its obligations under the APA and NEPA prior to imposing the PICMs. On the merits for summary judgment, OFP will demonstrate that there are numerous substantive deficiencies with the Biological Opinion, including the scope of the agency action, the scope of the environmental baseline, the analysis of the effects of the agency action, and the consideration of cumulative impacts. These defects render the jeopardy and adverse modification conclusions arbitrary and capricious and obviate the need for the RPA.

Intervenors also disregard that a preliminary injunction would be of limited duration. Indeed, the purpose of a preliminary injunction is to maintain the status quo pending a final determination of the suit on the merits. *E.g.*, *City of Moundridge v. Exxon Mobil Corp.*, 429 F. Supp. 2d 117, 126 (D.D.C. 2006) (citations omitted). In opposing injunctive relief, Intervenors point to several reviews of the status of the species and to their general, personal interest in salmonids. ECF 27 at 17-18. Those status reviews identify that salmonid populations have declined due to a variety of factors (e.g., variation in ocean survival, impediments to fish passage, temperature stress, competition from other species and hatchery-produced fish, impacts to habitat, etc.). ECF 9 at 14 n.7. Intervenors present no evidence that the status of the species will be impacted or altered if implementation of the PICMs is enjoined pending resolution of this suit.

Intervenors also assert that the public interest in preserving floodplain function and reducing taxpayer expenditures would be harmed by the issuance of an injunction. ECF 27 at 19-20. This argument is flawed and disingenuous. FEMA will continue to implement the NFIP in Oregon irrespective of any injunction of the PICMs. Accordingly, the existing restrictions on floodplain development, and the protections they provide, would remain in place. Intervenors also raise the economic condition of the NFIP nationwide and note, for example, that the NFIP lost $10 billion in 2017. *Id*. at 20. Intervenors fail to explain that those losses are attributed to Hurricanes Harvey, Maria, and Irma. FEMA, NFIP Debt (last updated Nov. 4, 2022), https://www.fema.gov/case-study/nfip-debt. Intervenors present no economic data regarding NFIP expenditures in Oregon or how they may be affected by any injunction of the imposition of the PICMs.

In considering the balance of equities and public interest, Intervenors ignore the procedural and substantive defects associated with FEMA's imposition of the PICMs. Courts universally

recognize that "there is a *substantial* public interest 'in having governmental agencies abide by the federal laws that govern their . . . operations.'" *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (emphasis added and citation omitted); *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009) ("public interest is served when administrative agencies comply with their obligations under the APA.") (citations omitted); *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 26 (D.D.C. 2009) ("[t]here is no question that the public has an interest in having Congress' mandates in NEPA carried out accurately and completely.") (citation omitted). And, Intervenors ignore the interests of Oregon NFIP-participating communities in protecting themselves and their residents from the impacts of complying with PICMs that are legally infirm. *E.g.*, ECF 6-1 at 43.

The public interest is overwhelmingly served by ensuring that federal agencies dutifully comply with their legal obligations. Contrary to Intervenors' assertions, any interim benefit to ESA-listed species attributable to imposition of the PICMs does not give FEMA carte blanche to blatantly violate the procedural and substantive requirements of the APA and NEPA.

D.    **Clarification Regarding the Scope of Requested Relief.**

OFP is requesting preliminary injunctive relief to halt FEMA's implementation and enforcement of the PICMs and De Facto Amendment pending resolution of this case. As part of its decision, the Court should find that FEMA lacks authority under 44 C.F.R. § 60.3(a)(2) to change requirements for NFIP participation without complying with the APA's requirements for notice and comment rulemaking and that FEMA must comply with NEPA before implementing and enforcing the PICMs.

### III.     CONCLUSION

For the foregoing reasons, and the reasons described in its prior briefing, ECF 6-1 and ECF 18, OFP requests that this Court enter a preliminary injunction enjoining Federal Defendants from implementing or enforcing the PICMs and De Facto Amendment until this Court has issued a final decision on OFP's claims.

Respectfully submitted this 7th day of March, 2025.

VAN NESS FELDMAN, LLP

/s/ *Molly Lawrence*
Molly Lawrence, WA Bar No. 28236
    D.D.C. Bar No. WA0003
Sophia E. Amberson, WA Bar No. 52528
    *Pro Hac Vice*
1191 Second Avenue
Suite 1800
Seattle, WA 98101
Tel.: 206.623.9372
Email: mol@vnf.com
    samberson@vnf.com

Tyson C. Kade, DC Bar No. 1018014
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
Tel.: 202.298.1800
Email: tck@vnf.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 7th day of March, 2025, a true and correct copy of the foregoing was filed using the Court's CM/ECF filing system, which shall send notice to all counsel of record.

                                /s/ *Molly Lawrence*
                                Molly Lawrence