# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OREGONIANS FOR FLOODPLAIN PROTECTION et. al., <br><br>    Plaintiffs, <br><br> v. <br><br> THE U.S. DEPARTMENT OF COMMERCE, et al., <br><br>    Defendants, <br><br> NORTHWEST ENVIRONMENTAL DEFENSE CENTER, et al., <br><br>    Defendant-Intervenors. | Case No. 1:25-cv-39-JMC <br><br> **DEFENDANT-INTERVENORS' REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE TO DISTRICT OF OREGON** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    The Parties Do Not Dispute That This Case Could Have Been Brought in the District of Oregon. ............................................................................................................................ 2

    II.    The Public Interest Factors Strongly Support Transfer. ................................................... 2

        a.    Related Litigation in the District of Oregon Poses a Concrete Risk of Conflicting Legal Consequences, Supporting Transfer. ............................................................. 2

        b.    There is Local Interest in the Matter That Strongly Weighs in Favor of Transfer. ... 4

        c.    The Other Public Interest Factors Are Largely Neutral. ............................................ 7

    III.    Private Interest Factors Do Not Overcome the Weight of the Public Interest Factors. ....... 8

        a.    Plaintiff's Choice of Forum. ..................................................................................... 8

        b.    Defendants' Choice of Forum. ................................................................................ 10

        c.    Opposing Parties' Attempts to Elevate this Concern as a Matter of National Importance Are Unpersuasive. ................................................................................ 11

        d.    Remaining Private Interest Factors Are Neutral. .................................................... 13

CONCLUSION ............................................................................................................................ 14

## TABLE OF AUTHORITIES

**Cases**

*Alaska Wilderness League v. Jewell*,
  99 F. Supp. 3d 112 (D.D.C. 2015) ................................................................................................ 7

*Barham v. UBS Fin. Servs.*,
  496 F. Supp. 2d 174 (D.D.C. 2007) ......................................................................................... 2, 4

*Biochem Pharma v. Emory Univ.*,
  148 F. Supp. 2d 11 (D.D.C. 2001) ............................................................................................... 4

*Bluetriton Brands, Inc. v. U.S. Forest Serv., et al.*,
  No. 1:24-cv-02302-JDB (D.D.C. 2024) ...................................................................................... 4

*Cal. Farm Bureau Fed'n v. Badgley*,
  No. 02-2328 (RCL), 2005 WL 1532718 (D.D.C. June 29, 2005) ............................................... 3

*Cameron v. Thornburgh*,
  983 F.2d 253 (D.C. Cir. 1993) .................................................................................................. 10

*Citizens Advocates for Responsible Expansion, Inc. v. Dole*,
  561 F. Supp. 1238 (D.D.C. 1983) ............................................................................................. 10

*Defs. of Wildlife v. Jewel,*
  74 F. Supp. 3d 77 (D.D.C. 2014) .................................................................................... 3, 4, 9, 12

*DeLoach v. Philip Morris Cos.*,
  132 F. Supp. 2d 22 (D.D.C. 2000) ............................................................................................ 11

*Greater Yellowstone Coal. v. Bosworth,*
  180 F. Supp. 2d 124 (D.C. 2001) ............................................................................................ 3, 4

*Holland v. A.T. Massey Coal,*
  360 F. Supp. 2d 72 (D.D.C. 2004) .............................................................................................. 2

*In re Korean Air Lines Disaster*,
  829 F.2d 1171 (D.C. Cir. 1987) ................................................................................................ 12

*Kinsella v. Bureau of Ocean Energy Mgmt.*,
  No. 22-2147 (JMC), 2022 WL 16852674 (D.D.C. Nov. 10, 2022) ............................................ 6

*M&N Plastics, Inc. v. Sebelius*,
  997 F. Supp. 2d 19 (D.D.C. 2013) ............................................................................................ 12

*Nat'l Wildlife Fed'n v. Harvey,*
  437 F. Supp. 2d 42 (D.D.C. 2006) .............................................................................................. 8

*Neighbors Against Bison Slaughter v. Nat'l Park Serv.*,
  No. 19-cv-3144, 2019 WL 6035356 (D.D.C. Nov. 14, 2019) .................................................. 13

*New Hope Power Co. v. U.S. Army Corps of Eng'rs*,
  724 F. Supp. 2d 90 (D.D.C. 2010) .............................................................................................. 6

*Nw. Envtl. Def. Ctr., et al. v. Fed. Emergency Mgmt. Agency,*
  No. 3:23-cv-01335-SI (D. Or.) ......................................................................................... 1, 3, 14

*Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs*,
  893 F. Supp. 2d 49 (D.D.C. 2012) .................................................................................. 5, 14

*Reiffin v. Microsoft Corp.*,
  104 F. Supp. 2d 48 (D.D.C. 2000) .................................................................................. 4, 10

*S. Utah Wilderness All. v. Norton*,
  315 F. Supp. 2d 82 (D.D.C. 2004) ....................................................................................... 14

*S. Utah Wilderness All. v. Norton*,
  No. 01-2518 (CKK), 2002 WL 32617198 (D.D.C. June 28, 2002) ........................................... 5

*Seafreeze Shoreside Inc. v. U.S. Dep't of the Interior*,
  No. 21-cv-3276 (CRC), 2022 WL 3906934 (D.D.C. June 27, 2022) ......................................... 7

*Shawnee Tribe v. United States,*
  298 F. Supp. 2d 21 (D.D.C. 2002) ....................................................................................... 11

*Sierra Club v. Flowers*,
  276 F. Supp. 2d 62 (D.D.C. 2003) ....................................................................................... 14

*Starnes v. McGuire,*
  512 F.2d 918 (D.C. Cir. 1974) ............................................................................................... 8

*Stewart Org., Inc. v. Ricoh Corp.,*
  487 U.S. 22 (1988) ................................................................................................................. 2

*Trout Unlimited v. U.S. Dep't of Agric.*,
  944 F. Supp. 13 (D.D.C. 1996) ............................................................................ 6, 7, 8, 10, 14

*Wash. Metro. Area Transit Auth. v. Ragonese,*
  617 F.2d 828 (D.C. Cir. 1980) ............................................................................................... 4

*Wilderness Soc'y v. Babbitt,*
  104 F. Supp. 2d 10 (D.D.C. 2000) ......................................................................................... 2

*Wyandotte Nation v. Salazar*,
  825 F. Supp. 2d 261 (D.D.C. 2011) ..................................................................................... 11

**Statutes**

28 U.S.C. § 1404(a) ..................................................................................................................... 2

**Regulations**

44 C.F.R. § 60 ............................................................................................................................ 12

**Other Authorities**

Federal Emergency Management Agency*, FEMA Suspends the Initiation of LOMR-F/CLOMR-F Cases in Six Southern California Counites,* available at https://www.fema.gov/fact-sheet/fema-suspends-initiation-lomr-f-clomr-f-cases-six-southern-california-counties ............................. 13

**INTRODUCTION**

Northwest Environmental Defense Center, Center for Biological Diversity, The Conservation Angler, and Willamette Riverkeeper (collectively "Conservation Groups") hereby reply to Defendants' Memorandum in Opposition to Motion to Transfer, ECF No. 29, and Plaintiffs' Memorandum in Opposition to Motion to Transfer, ECF No. 30 (collectively, "Opposing Parties"). Conservation Groups moved to transfer this case to the District of Oregon, where pending, related litigation similarly addresses the Federal Emergency Management Agency's ("FEMA") implementation of the 2016 Biological Opinion. *See Nw. Envtl. Def. Ctr., et al. v. Fed. Emergency Mgmt. Agency,* No. 3:23-cv-01335-SI (D. Or.); *see also* Biological Opinion (Defs.' Exhibit 2, ECF 12-2, hereinafter "Biological Opinion").

Plaintiffs Oregonians for Floodplain Protection ("OFP") and National Association of Homebuilders ("NAHB") urge this Court to accept their minimal ties to Washington, D.C. as sufficient to mitigate against transfer. *See generally* Pls.' Mem. in Opp'n to Mot. to Transfer, ECF No. 30 ("Pls.' Memo"). But neither Plaintiffs nor Defendants present persuasive arguments or evidence sufficient to set aside the Court's long-standing precedent that, when the same action is challenged in multiple jurisdictions, strong public-interest factors favor transfer to the venue in which the first action was filed. Moreover, Opposing Parties' attempts to color FEMA's implementation of the National Flood Insurance Program ("NFIP") in Oregon as an issue of national importance to demonstrate the convenience of their chosen forum and to minimize the local nature of the issue are contrary to the record, unpersuasive, and do not mitigate against the overwhelming justification for transfer based on pending related litigation in the District of Oregon. Accordingly, this Court should grant Conservation Groups' motion to transfer venue to the District of Oregon.

## ARGUMENT

I. **The Parties Do Not Dispute That This Case Could Have Been Brought in the District of Oregon.**

The "threshold question" in considering a transfer motion under 28 U.S.C. § 1404(a) is whether the action could have been brought in the proposed transferee court. Def.-Intervenors' Mem. in Supp. of Mot. to Transfer, ECF 26-1 at 6 ("Intervenors' Memo"). Opposing Parties do not dispute that this case could have been brought in the District in Oregon. Pls.' Memo at 6; Defs.' Mem. in Opp'n to Mot. to Transfer, ECF 29 at 5 ("Defs.' Memo"). Accordingly, the Court need only address the public and private factors in assessing the motion to transfer venue. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988).

II. **The Public Interest Factors Strongly Support Transfer.**

While convenience factors are typically addressed first, the "interest of justice" or public interest factors "may be decisive." *Wilderness Soc'y v. Babbitt,* 104 F. Supp. 2d 10, 16 (D.D.C. 2000). The first three public interest factors—(1) the desire to avoid multiple litigation from a single transaction; (2) the desire to try related litigation together; and (3) the public interest in conserving judicial resources—all counsel strongly in favor of transfer to the District of Oregon. *Holland v. A.T. Massey Coal,* 360 F. Supp. 2d 72, 75 (D.D.C. 2004).

    a. **Related Litigation in the District of Oregon Poses a Concrete Risk of Conflicting Legal Consequences, Supporting Transfer.**

Opposing Parties' attempts to minimize the relatedness of pending litigation in the District of Oregon are unpersuasive. As explained in Conservation Groups' memorandum, this court has consistently held that the "most significant factor" weighing in favor of transferring a case is the presence of closely related litigation. *Barham v. UBS Fin. Servs.,* 496 F. Supp. 2d 174, 180 (D.D.C. 2007); Intervenors' Memo at 8–11. Indeed, because of the pending litigation in

Oregon, the first three "interest of justice factors" all counsel in favor of the transfer of this case to the District of Oregon. These factors, in part, seek to ensure that simultaneous and parallel litigation does not result in inconsistent legal obligations for the defendant. *Cal. Farm Bureau Fed'n v. Badgley*, No. 02-2328 (RCL), 2005 WL 1532718 (D.D.C. June 29, 2005).

Opposing Parties' attempts to color the District of Oregon case as dissimilar to the instant litigation are unpersuasive. If Plaintiff groups in either case obtain relief sought, FEMA will be subject to conflicting legal obligations, as Conservation Groups seek to compel implementation of the biological opinion in the District of Oregon while OFP and NAHB seek to enjoin further implementation. As such, despite Opposing Parties' statements to the contrary, the risk of conflicting rulings is not "speculative" but concrete. *Defs. of Wildlife v. Jewel,* 74 F. Supp. 3d 77, 87 (D.D.C. 2014).[1]

Plaintiffs direct the Court to *Greater Yellowstone Coalition v. Bosworth* to suggest that "a potentially related case" is not sufficient to compel transfer, but mischaracterize the holding of that case. 180 F. Supp. 2d 124, 129 (D.C. 2001); Pls.' Memo at 17–18. In *Greater Yellowstone*, the movants argued that pending litigation in another district concerning a bison capture facility's impacts on eagles was sufficiently similar to the challenge of an entirely *different* federal decision—one which reissued federal grazing permits in the area. 180 F. Supp. 2d at 129.

---

[1] To downplay the impact the disposition of the cases could have on one another, Plaintiffs argue that "no schedule has yet been set for briefing on remedy [in the Oregon case], and it can be reasonably assumed that briefing would not occur until after a decision on the Motion for Preliminary Injunction in this case and perhaps a full decision on the merits. Those rulings would likely inform the Oregon District Court's action." Pls.' Memo at 18. This is a highly speculative, unwarranted assumption given that merits briefing is already complete in the Oregon case with oral argument scheduled for March 18, 2025, Scheduling Order, *Nw. Envtl. Def. Ctr.,* No. 3:23-cv-01335-SI (D. Or.), ECF 33, whereas merits briefing has yet to be scheduled in this case. *See* Scheduling Order, ECF 10.

Conservation Groups' Reply in Support of Motion to Transfer                                    3

Noting that the litigation concerned two *different federal decisions*, the Court rejected this argument. *Id.*

Here, conversely, Defendants' decisions regarding the implementation of the *same* biological opinion are being challenged in both cases, and disposition of both cases will determine how the NFIP will be implemented in Oregon going forward. *See Defs. of Wildlife,* 74 F. Supp. 3d at 86–87. Plaintiffs suggest that because the cases "do not involve the same claims," Pls.' Memo at 18, the cases are not sufficiently related. This ignores the fact that the parties seek opposite and conflicting relief; if Plaintiffs prevail on their claims, it will effectively nullify relief sought by Conservation Groups in the District of Oregon. Additionally, the administrative record is largely similar, if not the same, and both cases ultimately seek judgment regarding FEMA's legal obligations in implementing the text of the same Biological Opinion. Indeed, a case does not need to be identical to be sufficiently related for the purposes of transferring venue. *Bluetriton Brands, Inc. v. U.S. Forest Serv., et al.*, No. 1:24-cv-02302-JDB (D.D.C. 2024), *slip op* at 6. Even if Opposing Parties' framing of differences was accurate, there is substantial legal and factual overlap that similarly warrants transfer.

In short, Opposing Parties overlook the "well-established" rule that the presence of sufficiently related litigation favors transfer. *Wash. Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980); *see also Biochem Pharma v. Emory Univ.*, 148 F. Supp. 2d 11, 13 (D.D.C. 2001); *Reiffin v. Microsoft Corp.,* 104 F. Supp. 2d 48, 58 (D.D.C. 2000); *Barham*, 469 F. Supp. 2d at 180. Given the overwhelming weight of authority in this circuit finding that transfer is warranted when two proceedings concern similar issues, this public interest factor weighs heavily in favor of transfer. *Defs. of Wildlife,* 74 F. Supp. 3d at 87.

    **b.** **There is Local Interest in the Matter That Strongly Weighs in Favor of Transfer.**

This Court has also placed great importance on deciding local controversies at home. *Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs,* 893 F. Supp. 2d 49 (D.D.C. 2012)*; see also S. Utah Wilderness All. v. Norton*, No. 01-2518 (CKK), 2002 WL 32617198, at *5 (D.D.C. June 28, 2002). Plaintiffs argue that this is not a localized controversy or matter of local interest and suggest that their members' Oregon-based harms are only relevant for the purposes of establishing standing and are irrelevant to the local interest query. Pls.' Memo at 14–16; Defs.' Memo at 7–8. Defendants merely conclude, without support, that this is not a local controversy. Defs.' Memo at 7–8. These arguments are without merit.

Plaintiffs cannot have it both ways. Plaintiffs cannot point to the alleged conflicts with Oregon state law, the alleged threat of loss of "character and culture" of Oregon's communities, Absher Decl., ECF 4-3, ¶ 62, and the economic peril thrust upon Oregon communities, Balensifer Decl., ECF 4-14, ¶ 31, for the purposes of establishing standing and irreparable harm, Pls.' Mot. for Preliminary Injunction, ECF 4, only to subsequently deny that the biological opinion is of local concern. Per Plaintiffs' own declarations, most concrete effects of FEMA's actions in implementing the Biological Opinion will occur in Oregon. *See generally* Absher Decl., ECF 4-3; Balensifer Decl., ECF 4-14; Henrikson Decl., ECF 4-18; Hinkleman Decl., ECF 4-22. It is the impact of the NFIP on Oregon's floodplains that is addressed in the Biological Opinion. *See* Mot. to Transfer at 7. It is Oregon's species and ecosystems that are impacted by FEMA's implementation, or lack thereof, of the Biological Opinion, which calls for changes to the NFIP in Oregon. *Id*. at 11–12. And it is Oregon communities that play an active role in permitting and overseeing floodplain development pursuant to the Biological Opinion.[2]

---

[2] The localized interest is illustrated by the plethora of workshops and trainings fered throughout *Oregon* concerning the implementation of the biological opinion. *See e.g.,* Graves Decl., ECF 12-5 at 27 ¶ 39 ("To enhance its outreach, training and technical assistance, FEMA conducted at

Defendants' attempt to minimize the local nature of this controversy is also unpersuasive. FEMA consistently emphasizes the importance of its relationship with Oregon State agencies and floodplain managers, including the Oregon Department of Land Conservation and Development ("DLCD"). *See, e.g.,* Graves Decl., ECF 12-5 at 22 ¶ 14–15 (FEMA "has enlisted the support and assistance of the State [of Oregon] in developing the implementation plan and supporting guidance documents, and DLCD has provided 'crucial support' in that endeavor"). Indeed, this Court consistently recognizes that the involvement of the local public, including local agencies, is indicative of a strong local interest that warrants transfer. *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 19–20 (D.D.C. 1996); *see also Kinsella v. Bureau of Ocean Energy Mgmt.,* No. 22-2147 (JMC), 2022 WL 16852674 (D.D.C. Nov. 10, 2022) (noting that heavy involvement of the local public *as well as* pendency of multiple court cases pertaining to the matter demonstrates that transfer is appropriate).

Further, the notion that the biological opinion is national in reach is entirely speculative, at odds with the Biological Opinion's plain language, *see* Intervenors' Memo at 11–13, and contrary to FEMA's actions to date. Indeed, despite Plaintiffs' speculations as to what FEMA may or may not do in the future regarding national compliance with the ESA, here, FEMA is explicitly forgoing the opportunity to update the national regulatory criteria and is instead issuing Oregon-specific guidance in response to the Biological Opinion. Accordingly, the impacts of this matter will be entirely borne by Oregon residents, it is Oregon state agencies that have devoted significant time and energy to the implementation of the Biological Opinion, and the record

---

least 18-24 virtual and in-person trainings and 4-6 workshops from August 2024 to December 2024" for Oregon communities). These workshops and trainings were offered only to Oregon's NFIP communities and were not conducted nationwide, given that it is Oregon's communities that are subject to the Biological Opinion. *See Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 71 (D.D.C. 2003) (finding Florida had local interest in federal action in furtherance of a plan "drafted by state committee and adopted by the Florida legislature").

illustrates that this is a matter of local importance. *See* Intervenors' Memo at 11–13 (highlighting that the Biological Opinion is directed solely at NFIP implementation in Oregon). Plaintiffs offer no explanation as to how the Biological Opinion could be read as requiring national changes given its plain language and requirements, which are directed solely at Oregon communities. *See*, *e.g.*, AR 284 ("The first element of the reasonable and prudent alternative requires FEMA to develop an education and outreach strategy for RPA implementation and to provide notice to all NFIP participating communities *in Oregon* regarding the outcome of the agency's consultation and the substance of the RPA.") (emphasis added).

Given that this Court has repeatedly held that matters of local interest should be decided at home, this "important" public interest factor again supports transfer "to the venue directly affected"—here, the District of Oregon. *Trout Unlimited*, 944 F. Supp. at 19–20; *Seafreeze Shoreside Inc. v. U.S. Dep't of the Interior*, No. 21-cv-3276 (CRC), 2022 WL 3906934 (D.D.C. June 27, 2022) (quoting *Alaska Wilderness League v. Jewell*, 99 F. Supp. 3d 112, 116 (D.D.C. 2015)).

### c.     The Other Public Interest Factors Are Largely Neutral.

The remaining public interest factors are largely neutral, if not favorable to transfer. As Defendants note, "[f]ederal judges in the District of Oregon and the District of Columbia are equally capable to determine issues of compliance with NEPA, the ESA, and the Administrative Procedure Act." Defs.' Memo at 8. And while the D.C. Circuit may have more experience with APA cases generally, this is mitigated by the substantial judicial resources that have already been devoted to these issues in the District of Oregon. Moreover, per Plaintiffs' own standing declarations, the implementation of the biological opinion raises considerations of Oregon state

law, which again weighs in favor of transfer. *See Trout Unlimited,* 944 F. Supp. at 19 ("The district court in Colorado is more familiar than this court with the application of Colorado law.").

Conservation Groups recognize Opposing Parties' congestion concerns. However, these statistics do not account for the resources already devoted to the matter by the District of Oregon. Moreover, "congestion alone is not sufficient reason for transfer." *Nat'l Wildlife Fed'n v. Harvey,* 437 F. Supp. 2d 42, 49 (D.D.C. 2006) (quoting *Starnes v. McGuire,* 512 F.2d 918, 932 (D.C. Cir. 1974)). As such, this factors still does not outweigh the aforementioned public interest factors that strongly favor transfer to the District of Oregon.

Given the profound weight of the pending related litigation in the District of Oregon, coupled with the weight of this localized controversy favoring being adjudicated in the home forum, Opposing Parties have failed to demonstrate that the public interest factors, which are paramount to this Court's analysis, support retaining this matter in the District of Columbia.

## III.   Private Interest Factors Do Not Overcome the Weight of the Public Interest Factors.

The private interest factors—parties' choices of forum, where the claim arose, and access to sources of proof—are also insufficient to tip the scale against transfer. While Opposing Parties are correct that their preferred forum is afforded substantial deference, this does not overcome the strong preference to avoid duplicative, conflicting litigation. And any substantial weight afforded to Opposing Parties' choices of forum is mitigated by the comparably insignificant nature of the ties to Washington, D.C. For the foregoing reasons, the private interest factors cited by opposing parties are outweighed by countervailing private interest considerations that favor transfer to the District of Oregon.

### a.   Plaintiff's Choice of Forum.

Plaintiffs are correct that their choice in forum is entitled to substantial deference. However, this deference should be undermined by their own choice to file a case in Washington

D.C., despite knowing there was a related, fully briefed, pending matter in the District of Oregon. Plaintiffs themselves created these multijurisdictional efficiency concerns and consistency risks, knowing that this Court observes and favors the first-filed rule. *Defs. of Wildlife,* 74 F. Supp. 3d at 87–89.

Plaintiffs' purported ties to Washington, D.C. are minimal when compared to their ties to Oregon. *See* Pls.' Memo at 7. OFP's claims that Washington D.C. is its "home forum" are undermined by the fact that OFP represents its *members*, all of which are individuals who "own properties and businesses located within the floodplain within NFIP-participating communities *in Oregon*." Amended Compl., ECF-21 ¶ 13–15. Similarly, "OFP and its members are concerned about… the environment and the land use system developed *in Oregon.*" *Id.* at ¶ 15.

Plaintiffs next attempt to demonstrate meaningful ties relies on NAHB's principal place of business. Pls.' Memo at 7. However, NAHB is a trade organization incorporated in the State of Nevada that represents more than 120,000 members across the country, comprised of more than 700 state and local associations, *see* Amended Compl. at ¶ 18. Given NAHB's national reach, its ties to Washington, D.C. are relatively insignificant for the purpose of supporting venue in this district. Pls.' Memo at 7. And regardless of NAHB's presence in Washington, it similarly emphasizes that it is its *members* who live in Oregon that are impacted by this litigation. Amended Compl. at ¶ 21; Watson Decl., ECF 4-39, ¶ 2. In light of these allegations, which center Oregon, NAHB's office in Washington D.C. is of minimal significance. Therefore, while Plaintiffs' selected forum is afforded deference, this court has recognized that the moving party's burden is "substantially diminished" where the connection between plaintiffs, the controversy, and the chosen forum is attenuated. *Citizens Advocates for Responsible Expansion,*

*Inc. v. Dole*, 561 F. Supp. 1238, 1239 (D.D.C. 1983); *see also Trout Unlimited,* 944 F. Supp. at 17.

Further, Plaintiffs' attenuated ties to Washington D.C. are hardly a reason to forego the economies of resolving these two challenges in a single court. As this Court has recognized, in the D.C. Circuit, courts must carefully examine challenges to venue "to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). Otherwise, "by naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere." *Id.* Plaintiffs' decision to file their case in the District of Columbia, instead of the District of Oregon, has unnecessarily introduced the possibility of inconsistent judicial outcomes from two separate federal courts, and has resulted in wasted judicial resources by requiring two separate courts to examine and become familiar with complicated federal statutory schemes and a voluminous administrative record. As this court has repeatedly held, the "interests of justice are better served when a case is transferred to the district where related actions are pending." *Reiffin*, 104 F. Supp. 2d at 56 (quotations and citations omitted). This substantially undermines the weight of Plaintiffs' chosen forum.

  b. **Defendants' Choice of Forum.**

Opposing Parties point to Defendants' "chosen forum" of Washington D.C., where FEMA is headquartered. *See* Defs.' Memo at 5. However, any weight afforded to Defendants' choice of forum does not overcome this District's substantial concern with avoiding duplicative, conflicting litigation.[3] Moreover, the weight of Defendants' preferred forum is, to their own

---

[3] Notably, Defendants initially represented to this Court that they would themselves move to transfer venue to the District of Oregon. *See* Joint Mot. for Scheduling Order, ECF-10 ¶ 4 ("Defendants anticipate filing a motion to transfer venue to the United States District Court of Oregon where a related case is currently pending").

acknowledgement, undermined because the involvement of some federal officials located in Washington D.C. is not determinative. Defendants point to the signing of the PICM memorandum as having occurred in Washington, D.C. as warranting adjudication in Washington, D.C. Defs.' Memo at 5. This is unpersuasive, as federal officials necessarily depend on Oregon decisionmakers to effectuate and enforce the mandates of the Biological Opinion, illustrating an even closer nexus to Oregon.

Plaintiffs profess the importance of FEMA Headquarters' heavy involvement in the decisions regarding the RPA, its implementation, and the PICMs. Pls.' Memo at 8–11. But these contacts are counterbalanced by the substantial involvement of the regional NMFS and FEMA counterparts on the West Coast. *See* Intervenors' Memo at 13–14. Moreover, this Court has routinely recognized that involvement of a federal agency does not necessarily mitigate against transfer to another district. *Wyandotte Nation v. Salazar,* 825 F. Supp. 2d 261, 269 (D.D.C. 2011) (citing *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25–26 (D.D.C. 2002)) ("[M]ere involvement on the part of federal agencies, or some federal officials who are located in Washington, D.C. is not determinative."); *see also DeLoach v. Philip Morris Cos.*, 132 F. Supp. 2d 22, 25 (D.D.C. 2000) (noting that federal agencies headquartered in the District of Columbia are charged with generally regulating and overseeing the administrative process, which does not inherently support adjudication in Washington, D.C.). As such, given this case's strong ties to Oregon, Defendants' chosen forum is of little weight.

        **c.    Opposing Parties' Attempts to Elevate this Concern as a Matter of National Importance Are Unpersuasive.**

Opposing Parties both attempt to turn a case that is about the implementation of a biological opinion *in Oregon* into a case of national importance. *See* Defs.' Memo at 6, 8; Pls.' Memo at 11–12, 14–17. But their assertions are speculative and divorced from both the text of the Biological Opinion and from what Defendants have done and/or have stated they will do. Instead, Defendants offer conclusory statements about how the "statutory and constitutional questions" raised by Plaintiffs somehow raise national concerns better addressed by this Court rather than the District of Oregon.[4] This argument is unavailing. Moreover, Plaintiffs' similar attempts to nationalize the scope are not supported by FEMA's actions to date.

For example, Plaintiffs' characterization of RPA 4 implementation[5] is contrary to FEMA's chosen implementation approach: FEMA is not moving forward with updating the regulatory floodplain management criteria, and is instead taking an "alternative approach to meeting the intent of RPA 4 by providing *guidance* to communities on *multiple routes* to achieving a 'no net loss'" standard. *See* Graves Decl., ECF 12-5 at ¶ 49–55. Plaintiffs state that Conservation Groups "cannot avoid the plain language of the Biological Opinion and RPA elements." Pls.' Memo at 12. Ironically enough, though, it is Plaintiffs and FEMA who are

---

[4] This court has long held that all federal courts are presumed to be equipped to handle issues of federal law, including matters of constitutional law. *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175 (D.C. Cir. 1987). Moreover, in *Defs. of Wildlife,* this court found that the neutral weight of federal court competency further tipped in favor of transfer due to pending related litigation. 74 F. Supp. 3d at 68; *see also M&N Plastics, Inc. v. Sebelius*, 997 F. Supp. 2d 19 (D.D.C. 2013) (Transfer of venue to the District of Michigan was appropriate to hear a question challenging a law's compliance with the First Amendment of the Constitution).

[5] Plaintiffs fail to acknowledge that while the Biological Opinion can be read as *recommending* rulemaking on a national level, it only *requires* rulemaking with respect to the NFIP's implementation in Oregon. AR 286–87. Indeed, there is nothing in the NFIP's implementing regulations that preclude FEMA from developing regulations that apply only to Oregon communities. 44 C.F.R. § 60. Plaintiffs' framing of the implementation of RPA 3 suffers from the same deficiencies, as the Biological Opinion only calls for updates of maps in Oregon NFIP communities. AR 296.

avoiding the plain language of the BiOp.[6] Nonetheless, FEMA's implementation decisions, which avoid updating regulatory criteria, are being executed through state-specific, non-binding guidance. This plainly contradicts Plaintiffs' attempts to frame FEMA's actions as those with national implications.

Finally, Plaintiffs erroneously attribute the suspension of LOMR-Fs and CLOMR-Fs in California to the Biological Opinion issued for Oregon. Pls.' Memo at 12. But FEMA suspended processing of LMOR-Fs and CLOMR-Fs in certain California counties as a result of litigation brought *in California. See* Federal Emergency Management Agency, *FEMA Suspends the Initiation of LOMR-F/CLOMR-F Cases in Six Southern California Counites,* available at https://www.fema.gov/fact-sheet/fema-suspends-initiation-lomr-f-clomr-f-cases-six-southern-california-counties (August 13, 2020) (noting that "Ecological Rights Foundation filed a lawsuit" asking FEMA to consult on the ESA-impacts of the NFIP in California, and that, "to ensure that Ecological Rights Foundation's concerns are being addressed while FEMA is completing its BE, FEMA has decided to delay the initiation of LOMR-F and CLOMR-F cases"). Attributing this change to FEMA's processes in California to the Oregon Biological Opinion is plainly inaccurate, and does not tip the scale against transfer.

### d.   Remaining Private Interest Factors Are Neutral.

The remaining private interest factors—namely, the convenience of the parties and witnesses, and the ease of access to proof—are neutral and do not significantly weigh against the weight of the pending related litigation in Oregon.[7] As Plaintiffs acknowledge, this case will

---

[6] If anything, this tension illustrates how closely related this case is to the proceedings in Oregon, as both Plaintiff parties are seeking relief regarding FEMA's efforts, or alleged lack thereof, to comply with the mandates of the Biological Opinion.

[7] Plaintiffs' reliance on *Neighbors Against Bison Slaughter v. Nat'l Park Serv.*, No. 19-cv-3144, 2019 WL 6035356, at *6 (D.D.C. Nov. 14, 2019), is misplaced, as Conservation Groups are not suggesting that its mere "participation" is grounds for transfer. Rather, grounds for transfer are in

largely be based on the administrative record and is likely to be resolved on summary judgment. Indeed, the administrative record in this case, which has yet to be lodged, is likely to be substantially similar, if not the same, as the administrative record that has already been lodged in the District of Oregon, which Plaintiffs have had access to since March 2024. *See* Notice of Lodging Administrative Record, *Nw. Envtl. Def. Ctr., et al. v. Fed. Emergency Mgmt. Agency,* No. 3:23-cv-01335-SI (D. Or.), ECF 10; *see also Pres. Soc'y of Charleston,* 893 F. Supp. 2d at 56 (resolution of the matter will be based off of the administrative record, rendering the two private-interest factors of convenience of witnesses and access to proof as neutral); *Trout Unlimited*, 944 F. Supp. at 18; *S. Utah Wilderness All. v. Norton*, 315 F. Supp. 2d 82, 88 (D.D.C. 2004); *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 69 (D.D.C. 2003).

As such, these convenience factors are largely neutral and are insufficient to overcome the significant weight of the myriad public interest factors that favor transfer.

## CONCLUSION

For the foregoing reasons, Conservation Groups request that this Court grant Conservation Groups' Motion to Transfer.

Dated: March 10, 2025                     Respectfully submitted,

*/s/ Chelsea Stewart-Fusek*
CHELSEA STEWART-FUSEK
(D.C. Bar No. OR0029)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: (971) 717-6425

---

part rooted in pending, related litigation and the concrete risk of conflicting court opinions. Even so, of the four intervenor groups, only the Center for Biological Diversity has any tie to Washington, D.C., while the other intervenor groups are based in Oregon. Moreover, the Center for Biological Diversity lawyers litigating this matter are based in Portland, Oregon.

Email: cstewartfusek@biologicaldiversity.org

*/s/ Ryan Adair Shannon*
Ryan Adair Shannon (D.C. Bar No. OR 0007)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 11374
Portland, OR 97211
T: 503.283.5475 ext. 407
F: 503.283.5528
E: rshannon@biologicaldiversity.org